**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION
and AMERICAN CIVIL LIBERTIES
FOUNDATION,

                Plaintiffs,

    v.

DEPARTMENT OF JUSTICE, FEDERAL
BUREAU OF INVESTIGATION, and
DEPARTMENT OF HOMELAND
SECURITY,

                Defendants.

No. 24 Civ. 5722 (JSR)

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION FOR SUMMARY JUDGMENT

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2614
Email: rebecca.salk@usdoj.gov

REBECCA L. SALK
Assistant United States Attorney
   - Of Counsel

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..................................................................................................................2

    I.      Plaintiffs' FOIA Request and the Government's Initial Responses ......................2

    II.     The Instant Action and the Government's Subsequent Responses.............................3

        A.  The FBI ....................................................................................................... 3

        B.  DHS and its Components......................................................................... 4

             i.     CBP .........................................................................................4

             ii.    ICE ......................................................................................... 4

             iii.   DHS I&A ..................................................................................5

             iv.   DHS Office of Inspector General ...........................................6

             v.    DHS PRIV ............................................................................ 7

        C.  DOJ NSD ..................................................................................................8

STANDARD OF REVIEW ...................................................................................................8

ARGUMENT ......................................................................................................................9

    I.      DHS and DOJ Conducted Adequate Searches.................................................9

     A.  The Law of Adequate Search .............................................................................9

     B.  All DHS Components Conducted Adequate Searches or Reasonably Determined a
        Search Would Be Futile.............................................................................10

             i.     CBP Reasonably Determined a Search Would Be Futile .........................10

             ii.    ICE Conducted an Adequate Search..........................................11

             iii.   DHS OIG Conducted an Adequate Search .................................12

             iv.   DHS I&A Conducted an Adequate Search.................................12

             v.    DHS PRIV Conducted an Adequate Search .............................13

     C.  DOJ NSD Conducted an Adequate Search ....................................................14

    II.     The Government's Assertions of Exemptions Are Justified ............................15

     A.  Exemption 3 ....................................................................................................15

i

      i.    Legal Standard ...................................................................15

      ii.   Application by the FBI ......................................................16

B.  Exemption 5 ..............................................................................17

      i.    Legal Standard ...................................................................17

      ii.   Application by DHS PRIV ................................................18

      iii.  Application by ICE ...........................................................18

C.  Exemptions 6 and 7(C) ............................................................19

      i.    Legal Standard ...................................................................19

      ii.   Application by the FBI and ICE .......................................20

D.  Exemption 7(E) ........................................................................21

      i.    Legal Standard ...................................................................21

      ii.   Application by the FBI ......................................................21

      iii.  Application by ICE ...........................................................23

E.  The Government Satisfied the Foreseeable Harm Requirement............................23

F.  The Government Properly Segregated and Released Non-Exempt Portions of the Redacted Records..................................................................25

CONCLUSION.................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*ACLU v. U.S. Dep't of Def.*,
  901 F.3d 125 (2d Cir. 2018)........................................................................................ 9

*Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*,
  376 F. Supp. 3d 345 (S.D.N.Y. 2019)........................................................................ 20

*Allard K. Lowenstein Int'l Project v. U.S. Dep't of Homeland Sec.*,
  626 F.3d 678 (2d Cir. 2010)........................................................................... 21, 22, 24

*Amnesty Int'l USA v. C.I.A.*,
  728 F. Supp. 2d 479 (S.D.N.Y. 2010)........................................................................ 25

*Amnesty Int'l USA v. C.I.A.*,
  No. 07 Civ. 5435 (LAP), 2008 WL 2519908 (S.D.N.Y. June 19, 2008)..................... 10

*Assoc. Press v. U.S. Dep't of Def.*,
  554 F.3d 274 (2d Cir. 2009)........................................................................................ 20

*Assoc. Press v. U.S. Dep't of Justice*,
  549 F.3d 62 (2d Cir. 2008)........................................................................................ 16

*Blackwell v. F.B.I.*,
  646. F.3d 37 (D.C. Cir. 2011)..................................................................................... 24

*Bloomberg L.P. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  649 F. Supp. 2d 262 (S.D.N.Y. 2009)....................................................................... 8, 9

*Brennan Ctr. for Just. at N.Y Univ. Sch. of Law v. U.S. Dep't of Just.*,
  697 F.3d 184 (2d Cir. 2012)................................................................................. 17. 18

*C.I.A. v. Sims*,
  471 U.S. 159 (1985)................................................................................................... 16

*Carney v. U.S. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994)............................................................................... 9, 10, 11

*Dep't of the Interior v. Klamath Water Users Prot. Ass'n*,
  532 U.S. 1 (2001)....................................................................................................... 15

*Fitzgibbon v. C.I.A.*,
  911 F.2d 755 (D.C. Cir. 1990).................................................................................... 20

*Freedom of Press Found. v. Dep't of Just.,*
   493 F. Supp. 3d 251 (S.D.N.Y. 2020) ...................................................................... 22

*Gonzalez v. United States Citizenship & Immigr. Servs.,*
   475 F. Supp. 3d 334 (S.D.N.Y. 2020) ...................................................................... 22

*Grand Cent. P'ship, Inc. v. Cuomo,*
   166 F.3d 473 (2d Cir. 1999).......................................................... 9, 17, 18, 19

*Iturralde v. Comptroller of Currency,*
   315 F.3d 311 (D.C. Cir. 2003)................................................................ 10

*James Madison Project v. Office of the Dir. of Nat'l Intel.,*
   725 F. Supp. 3d 81 (D.D.C. 2024) ...................................................... 23

*John Doe Agency v. John Doe Corp.,*
   493 U.S. 146 (1989)................................................................ 15

*Long v. Off. of Pers. Mgmt.,*
   692 F.3d 185 (2d Cir. 2012)............................................................. 9, 19

*Maynard v. C.I.A.,*
   986 F.2d 547 (1st Cir. 1993).............................................................. 10

*Morley v. C.I.A.,*
   508 F.3d 1108 (D.C. Cir. 2007)........................................................ 16

*Murphy v. Exec. Off. for U.S. Att'ys,*
   789 F.3d 204 (D.C. Cir. 2015)........................................................ 17

*N.Y. Times Co. v. U.S. Dep't of Just.,*
   872 F. Supp. 2d 309 (S.D.N.Y. 2012)................................................ 2

*Nat'l Ass'n of Retired Fed'l Emps. v. Horner,*
   879 F.2d 873 (D.C. Cir. 1989)........................................................ 20

*Nat. Res. Def. Council v. United States Env't Prot. Agency,*
   19 F.4th 177 (2d Cir. 2021) ............................................................ 18

*Peltier v. F.B.I.,*
   218 Fed. App'x 30 (2d Cir. 2007)................................................... 21

*Perry v. Block,*
   684 F.2d 121 (D.C. Cir. 1982)........................................................ 10

*Radar Online LLC v. Fed. Bureau of Investigation,*
   692 F. Supp. 3d 318, (S.D.N.Y. 2023) ................................................................... 22

*Reclaim the Records v. Dep't of State,*
   No. 23 Civ. 1529 (VEC), 2024 WL 3938296 (S.D.N.Y. Aug. 26, 2024)................................ 9

*Seife v. FDA,*
   43 F.4th 231 (2d Cir. 2022) ............................................................................ 23

*Sussman v. U.S. Marshals Serv.,*
   494 F.3d 1106 (D.C. Cir. 2007) ........................................................................ 25

*Tigue v. DOJ,*
   312 F.3d 70 (2d Cir. 2002)............................................................................. 17

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.,*
   510 U.S. 487 (1994)................................................................................... 20

*U.S. Dep't of State v. Wash. Post Co.,*
   456 U.S. 595 (1982).................................................................................. 19

*Vaughn v. Rosen,*
*523 F.2d 1136 (D.C. Cir. 1975)……………………………………………………………………24*

Statutes

5 U.S.C. § 552(b) .................................................................................. 24, 25

5 U.S.C. § 552(b)(5) ................................................................................. 18

5 U.S.C. § 552(b)(6) ................................................................................. 21

5 U.S.C. § 552(b)(7)(C) .............................................................................. 22

5 U.S.C. § 552(b)(7)(E) .............................................................................. 23

49 U.S.C. § 114(4) .................................................................................. 17

50 U.S.C. § 3024 .................................................................................... 17

6 C.F.R. § 5.3(a)(1)................................................................................ 3, 4

49 C.F.R. § 1520.5(b)(8)(i) .......................................................................... 17

Defendants Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), and Department of Homeland Security ("DHS," and together with DOJ and FBI, the "Defendants" or the "Government"), by their attorney, Matthew Podolsky, Acting United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their partial motion for summary judgment.[1]

## PRELIMINARY STATEMENT

This action concerns a Freedom of Information Act ("FOIA") request by plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "Plaintiffs") that was sent to Defendants for records relating to the use of Joint Terrorism Task Forces ("JTTFs") and fusion centers "to investigate, collect, and disseminate information on people engaged in protest[.]"  Plaintiffs' Complaint ("Compl."), ECF No. 1, ¶ 1.

After Plaintiffs filed the instant action, Defendants—including the numerous components that received referrals from Defendants—conducted comprehensive electronic and manual searches in response to Plaintiffs' FOIA request.  As explained in the detailed declarations filed in support of Defendants' motion, each search was reasonably calculated to discover the documents requested.  Further, where non-exempt responsive records were located, such records were released either in full or in part to Plaintiffs.  To the extent responsive records were released in part, the Government properly withheld information subject to FOIA Exemptions 3, 5, 6, 7(C), and/or 7(E).  The declarations provided by the FBI, ICE, and DHS's Privacy Office—the only agencies/components to identify responsive records—provide more than ample justification for Defendants' withholding of information on the above-referenced grounds.  Because the

---

[1] On April 11, 2025, the Court granted Defendants' request to bifurcate the motion with respect to the DHS Office of Civil Rights and Civil Liberties ("CRCL").  Accordingly, DHS's motion with regard to records sought from DHS CRCL will be filed on May 14, 2025, at which point all Government agencies or components at issue will have moved for summary judgment.

Government has conducted searches reasonably calculated to locate all responsive documents and has properly withheld information pursuant to valid FOIA Exemptions, the Court should grant Defendants' motion.

## BACKGROUND[2]

### III.    Plaintiffs' FOIA Request and the Government's Initial Responses

On May 21, 2024, Plaintiffs sent a FOIA request (the "Request") to the FBI, the DHS Privacy Office ("DHS PRIV"), and the DOJ National Security Division ("DOJ NSD"). *See* ECF No. 1-1. The Request contained four subparts. *Id.* at 7-9. Broadly, the Request sought: (1) policies, training materials, and legal opinions relating to JTTFs' and fusion centers' monitoring or investigating of individuals or organizations engaged in protest; (2) the number and names of individuals or groups investigated through or by JTTFs and/or fusion centers in connection with protests; (3) records concerning the definition of thirteen specific terms "as used and applied by JTTFs and/or fusion centers"; and (4) records describing the process "individuals may use to find out whether and what information has been collected and maintained by JTTFs and fusion centers, and the process by which any inaccurate information may be challenged and expunged." *Id.*

The FBI acknowledged receipt of Plaintiffs' Request by letter dated June 5, 2024. Declaration of Michael Seidel ("Seidel Decl.") ¶¶ 8-11. By letter dated May 30, 2024, DHS PRIV acknowledged receipt of Plaintiffs' Request. Declaration of Catrina M. Pavlik-Keenan ("Pavlik-Keenan Decl.") ¶ 8. DHS PRIV notified Plaintiffs that DHS Headquarters Office of Intelligence & Analysis ("DHS I&A"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration

---

[2] Defendants have not submitted a Local Rule 56.1 statement. "The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." *N.Y. Times Co. v. U.S. Dep't of Just.*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted). Moreover, Local Civil Rule 56.1 now specifically exempts FOIA cases. *See* Local Civ. R. 56.1(a).

and Customs Enforcement ("ICE") were the DHS components most likely to possess responsive records. *Id.* DHS PRIV then transferred the Request to DHS I&A, CBP, and ICE. *See* Declaration of Meekia Windham ("Windham Decl.") ¶ 10; Declaration of Patrick Howard ("Howard Decl.") ¶ 14; Declaration of Fernando Pineiro ("Pineiro Decl.") ¶ 15. DOJ NSD confirmed via e-mail that it had received Plaintiffs' Request on July 12, 2024. Declaration of David O'Dowd ("O'Dowd Decl.") ¶ 8.

## IV.        The Instant Action and the Government's Subsequent Responses

Plaintiffs filed this suit on July 29, 2024. ECF No. 1. The subsequent work conducted by each named defendant and their various components is summarized below.

A. The FBI

The FBI reviewed the Request and determined that certain portions of the information requested could be located if Plaintiffs were willing to narrow the Request's scope. Seidel Decl. ¶ 19. Following discussions with Plaintiffs concerning terms, offices, and portions of the request at issue, the parties agreed to search terms and parameters for items 1 through 3 of the Request.[3] *Id*. The FBI then conducted searches using the agreed upon terms and parameters. *Id.* ¶ 20. Plaintiffs have since indicated that they are not challenging the adequacy of the FBI's search.

The FBI ultimately identified and reviewed 460 pages of potentially responsive records, and released 205 pages of records in full or in part, with certain information exempted pursuant to FOIA Exemptions 3, 5, 6, 7(C), and 7(E). *Id.* ¶¶ 21-23.

---

[3] Plaintiffs also agreed to withdraw item four of the Request with respect to the FBI, so long as the FBI clarified the process for individuals to make requests for information collected and maintained by JTTFs and fusion centers. Seidel Decl., ¶ 19. As explained to Plaintiffs and memorialized in the FBI's declaration, the FBI does not have a specific procedure for requesting individual information and/or amending records that applies solely to records pertaining to JTTFs and/or Fusion Centers. *Id*. The FBI therefore did not engage in any further work with respect to item four of Plaintiffs' Request.

3

B. <u>DHS and its Components</u>[4]

  i. *CBP*

On July 10, 2024, CBP referred the Request to the National Targeting Center ("NTC") after determining that it was the office within CBP most likely to maintain records responsive to Plaintiffs' Request. *See* Howard Decl. ¶¶ 16-17. A subject matter expert ("SME") within the NTC determined that a search would not be reasonably likely to identify any responsive records because the NTC does not coordinate or direct operational efforts with JTTFs or fusion centers. *Id.* ¶ 18. Accordingly, on July 17, 2024, the NTC advised CBP by email that they had no records responsive to Plaintiffs' Request. By letter dated August 21, 2024, CBP's FOIA unit sent Plaintiffs a final response indicating that the records requested were not under the purview of CBP. *Id.* ¶ 20.

  ii. *ICE*

After reviewing Plaintiffs' Request, the ICE FOIA Office determined that the ICE Office of Regulatory Affairs and Policy ("ORAP") and Homeland Security Investigations ("HSI") were the offices reasonably likely to have responsive records, as HSI is the only operational component within ICE that is a JTTF partner, and ORAP is the office most likely to have ICE policy-related documents. *See* Pineiro Decl. ¶ 23.

Upon receipt of Plaintiff's Request on July 22, 2024, an ORAP Taskings Analyst conducted a search of the locations that were reasonably likely to have potentially responsive records: (1) ICE's intranet, which stores ICE's policies; and (2) the ORAP internal document repository (SharePoint), which houses background material relating to ICE's policies. *Id.* p. 13, ¶ 42. The ORAP Taskings Analyst searched both locations using the following terms: "Joint Terrorist Task Force"; "JTTF"; and "terror." *Id.*

---

[4] In addition to the components identified herein, DHS PRIV also referred Plaintiffs' Request to DHS CRCL. Pavlik-Keenan Decl. ¶ 13. As previously noted, CRCL's search will be addressed in the DHS's forthcoming motion. *See supra* n.1.

On August 28, 2024, the HSI Records Disclosure Unit ("RDU") received the FOIA Request and determined that the HSI office that should be tasked with conducting a search for potentially responsive records was the National Security Investigative Division/Joint Terrorist Task Force ("NSID/JTTF"). *Id.* ¶ 27. HSI RDU therefore tasked all ten NSID/JTTF employees with conducting a search of his/her hardcopy and electronic records by searching locations which, in their judgment, were reasonably likely to contain responsive records based on the way each employee organized their records in the normal course of business. *Id.* All NSID/JTTF employees then ran searches for responsive records. *Id.* ¶¶ 28-38.

In total, HSI and ORAP identified 73 potentially responsive pages. *Id.* ¶ 18. Of those 73 pages, ICE FOIA identified 11 pages with ICE equities; the remaining 62 pages were determined to originate from the FBI. *Id.* ¶¶ 19-20. ICE FOIA determined that the 11 pages with ICE equities should be withheld in part pursuant to FOIA exemptions 5, 6, 7(C), and 7(E). *Id.* ¶ 19. ICE FOIA then referred all 73 pages to the FBI for processing and release to Plaintiffs. *Id.* ¶ 20. ICE's records were ultimately provided to Plaintiffs as part of the FBI's second interim release of records on March 31, 2025. *See id.* ¶ 22.

      *iii.  DHS I&A*

DHS I&A determined that the most reasonable means of locating records potentially responsive to items 1, 2, and 4 of the Request would be to task its Field Intelligence Directorate ("FID") with the search, as FID is the office within DHS I&A that is most likely to interact with JTTFs and fusion centers. Windham Decl. ¶¶ 8, 13. Accordingly, DHS I&A tasked all ten regions of its FID to search their files for records responsive to items 1, 2, and 4 of the Request. *Id.* ¶ 14. Each region then conducted a search of both e-mails and shared drives using the terms:

"surveillance AND protest AND fusion center"; and "protestors AND surveillance." *Id.* No responsive records were identified.

DHS I&A advised Plaintiffs that part 3 of the Request was overly broad as written because DHS I&A's work often directly focuses on domestic terrorism and domestic violent extremism. *Id.* ¶ 15. After further discussion, DHS I&A tasked the search to FID's ten regional directors. *Id.* ¶ 16. The regional directors then conducted a search of e-mails and shared drives using the terms provided in part 3 of the request, in addition to several others designed to identify potentially responsive records. *Id.* (listing the terms). Upon completion of the searches, 19,361 pages of potentially responsive records were identified for further review. *Id.* ¶ 17. After review, it was determined that none of the pages identified were responsive to the Request. *Id.*

### iv. *DHS Office of Inspector General*

On January 7, 2025, DHS PRIV also referred the Request to the DHS Office of Inspector General ("DHS OIG"). Declaration of Tiffanie Woodland ("Woodland Decl.") ¶ 18. After reviewing the Request, the DHS OIG FOIA Unit determined that two program offices within DHS OIG were reasonably likely to have potentially responsive records: (1) the DHS OIG Office of Audits ("OA"); and (2) the Office of Inspections and Evaluations ("OIE"). *Id.* ¶¶ 36, 40. Upon receipt of the search tasking, the Acting Director of Liaison for OA conducted a search of his outlook as well as OA's electronic files located within the Project Tracking System, the TeamMate application, and the program office's Shared O: Drive, which houses audit project folders. The search terms used for each search were: "Joint Terrorism Task Force"; "JTTF"; "Fusion Center"; "protest"; "privacy"; "civil rights"; "civil liberties"; and all terms listed in part (3) of Plaintiffs' Request. *Id.* ¶ 36. The FOIA unit manually reviewed the records and determined that none of the records identified were responsive to the Request. *Id.* ¶ 39.

Similarly, the Request was sent to the appropriate individuals within OIE to conduct a search for potentially responsive records. *Id.* ¶ 44. Pursuant to the search tasking, an Intelligence Officer within OIE determined that the only locations reasonably likely to contain potentially responsive records were his emails, as well as the program office's Shared O: Drive, which houses project folders. *Id.* Both locations were then searched using the following terms: "Joint Terrorism Task Force"; "JTTF"; "surveil"; "surveillance"; "interrogate"; "protest"; and "extremism." *Id.* OIE did not identify any records responsive to Plaintiffs' request. *Id.* ¶ 46.

Finally, in addition to the program offices' searches, the DHS OIG FOIA Unit conducted a search of the DHS OIG public website for records responsive to the Request. *Id.* ¶ 48. The search terms used for the public website search were: "JTTF"; "fusion"; and "fusion center." *Id.* Following a review of the records located pursuant to these search terms, it was determined that none of the records identified were responsive to Plaintiffs' Request. *Id.*

       *v.*   *DHS PRIV*

Following further discussions with Plaintiffs after the complaint was filed, DHS PRIV agreed to run searches for potentially responsive records maintained by several additional DHS offices: (1) the DHS Office of Partnership and Engagement ("OPE"); (2) the DHS Office for State and Local Law Enforcement ("OSLLE"); (3) the DHS Office of Policy ("PLCY"); (4) the DHS Executive Secretary ("Exec Sec"); and (5) DHS PRIV. *See* Pavlik-Keenan Decl. ¶ 19.

Each of these offices conducted searches of their employees' emails, personal and electronic shared drive folders, and desktops for potentially responsive records by applying a comprehensive set of search terms designed to locate records pertaining to the use of JTTFS and fusion centers in connection with protest-related activities. *Id.* ¶¶ 20-25. Upon completion of all searches, DHS PRIV received the following responses: (1) OPE (no records); (2) OSLLE (124

pages of potentially responsive records found); (3) PLCY (no records); (4) Exec Sec (35 pages of potentially responsive records found); and (5) DHS PRIV (no records aside from those publicly available online). *Id.* ¶ 27. In total, 159 pages of potentially responsive records were identified. *Id.* Ultimately, DHS PRIV released 106 pages in full; 45 pages were released in part and 8 pages withheld in full pursuant to FOIA exemptions (b)(5) and (b)(6). *Id.*

### C. DOJ NSD

DOJ NSD's FOIA Unit consulted with SMEs from DOJ NSD's Counterterrorism Section and DOJ NSD's litigation support unit, as well as DOJ NSD's Supervisory Records Manager. O'Dowd Decl. ¶¶ 10-14. These consultations led to the determination that it was unlikely that DOJ NSD would possess records responsive to Plaintiffs' Request because DOJ NSD's interactions with JTTFs and fusion centers were limited. *Id.* ¶ 15. However, it was determined that if DOJ NSD did maintain such records, they might be found by searching the e-mails of the Deputy Assistant Attorney General ("DAAG") responsible for supervision of DOJ NSD's Counterterrorism Section and the DAAG responsible for supervision of DOJ NSD's Law and Policy Section. *Id.* After consulting with SMEs, the FOIA Unit determined that the following search terms should be used: "JTTF policy"; "JTTF guidance"; "JTTF MOU"; "Fusion Center guidelines"; "Fusion Center policy"; "Fusion Center MOU"; and "Fusion Center agreement." *Id.* ¶ 16. The FOIA Unit then searched the emails of both DAAGs using the above-referenced terms. Upon completion, the searches identified 34 potentially responsive records totaling 667 pages. *Id.* ¶ 17. DOJ NSD's FOIA Unit then reviewed those records for responsiveness to Plaintiffs' Request. *Id.* However, no responsive records were identified. *Id.*

### STANDARD OF REVIEW

"Summary judgment is the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P. v. Bd. of Governors of Fed. Rsrv. Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009).

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An agency can satisfy its burden on a motion for summary judgment by submitting a declaration that (1) supplies "facts indicating that the agency has conducted a thorough search" and (2) gives "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). An agency's justification for asserting an exemption "is sufficient if it appears logical and plausible." *ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018).

## ARGUMENT

### I.    DHS and DOJ Conducted Adequate Searches[5]

#### A.    The Law of Adequate Search

The government does not have a heavy burden in defending the searches it performed; each agency need only show "that its search was adequate." *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quotation marks omitted). A search is judged by the efforts the agency undertook, not by its results: the agency must demonstrate that its search was "reasonably calculated to discover the requested documents," not that the search "actually uncovered every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). The search "need not be perfect, but rather need only be reasonable." *Id.* Moreover, "[w]hen it is clear that an agency does not maintain the requested records and the Government declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all." *Reclaim the Records v. Dep't of State*, No. 23 Civ. 1529 (VEC), 2024 WL 3938296, at *3 (S.D.N.Y. Aug. 26, 2024) (quotation marks omitted).

---

[5] The FBI's search is not addressed herein, as Plaintiffs have agreed not to challenge the scope and adequacy of the FBI's search.

Agency search declarations may be made by the individuals supervising each agency's search, rather than by each individual who participated. *Carney*, 19 F.3d at 814. Where an agency's declaration demonstrates that it has conducted a reasonable search,[6] "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993). "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption. *Carney*, 19 F.3d at 813 (quotation marks omitted).

B.  <u>All DHS Components Conducted Adequate Searches or Reasonably Determined a Search Would Be Futile</u>

i.   *CBP Reasonably Determined a Search Would Be Futile*

CBP reasonably concluded that the records sought by Plaintiffs are not maintained by CBP, and that therefore a search would be futile. First, CBP determined that if the records sought were maintained by CBP, they were most likely maintained by the NTC, the division within CBP responsible for "identifying threats to our Nation's security" and overseeing CBP's participation in task forces. Howard Decl. ¶ 16. However, a subject matter expert within the NTC "determined that a search would not be reasonably likely to identify any responsive documents because the NTC does not coordinate or direct operational efforts with JTTFs or fusion centers." *Id.* ¶ 18. Given that Plaintiffs' request is entirely focused on JTTFs and fusion centers, it was reasonable for CBP to determine that a search for records would be futile and unnecessary. *See Amnesty Int'l USA v. C.I.A.*, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at *11 (S.D.N.Y. June 19, 2008)

---

[6] To describe a reasonable search, a declaration should explain "the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (citation and internal quotation marks omitted). The declaration need not "set forth with meticulous documentation the details of an epic search." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

("FOIA does not demand a search that would be futile.").  CBP's response to Plaintiffs' request was therefore adequate and should be upheld.

>    ii.    *ICE Conducted an Adequate Search*

ICE's searches were reasonably calculated to discover responsive records and should be upheld.  As an initial matter, ICE's declaration sufficiently describes the reasons that HSI and ORAP were the two ICE offices identified as possibly having potentially responsive records.  *See* Pineiro Decl. ¶ 25 ("HSI is the only ICE component that participates in the FBI-led [JTTF]."); *id.* ¶ 23 ("ORAP is the office most likely to have ICE policy-related documents.").

Moreover, ICE's declaration makes clear that the searches themselves were also reasonably designed to locate records responsive to Plaintiffs' Request.  HSI tasked the National Security Investigative Division/Joint Terrorist Task Force ("NSID/JTTF") with searching for records given the subject matter of the request, and then all employees within NSID/JTTF searched their own records by searching locations which, in their judgment, were reasonably likely to contain responsive records.  *Id.* ¶ 27.  ICE's declaration describes in sufficient detail the search terms utilized by each employee and the locations searched.  *Id.* ¶¶ 28-38.  Similarly, ICE's declaration makes clear that ORAP's search was reasonably calculated to locate responsive records.  All locations where potentially responsive records might be located were searched: (1) ICE's intranet, which stores ICE policies; and (2) ORAP's internal document repository (SharePoint), which houses background material relating to ICE policies.[7]  *Id.* p. 13, ¶ 42.  ICE's declaration also details the search terms used by ORAP and describes the rationale for ICE's determination that it did not need to conduct a search of ORAP employees' e-mails.  *Id.* p. 13, ¶ 43 (explaining that ORAP

---

[7] ORAP did not search for hard copy files, as all policy files have been digitized.  *Id.* ¶ 42 n.2.

employees do not work on matters related to JTTFs or fusion centers).  ICE's searches were therefore reasonable and should be upheld.

### iii.    DHS OIG Conducted an Adequate Search

DHS OIG also conducted a search reasonably calculated to identify documents responsive to the Request.  DHS OIG's declaration describes in detail the reasons that it chose to search particular program offices within DHS OIG.  *See* Woodland Decl. ¶¶ 36, 43.  In addition to considering their knowledge and expertise regarding DHS OIG's various program offices, the DHS OIG FOIA Unit also specifically considered discussions Government counsel had with Plaintiffs when designing their search.[8]  *Id.* ¶ 43.

DHS OIG's declaration describes, in sufficient detail, the locations searched by each program office, *see id.* ¶ 36 (e-mails of the Acting Director of Liaison for OA and OA's electronic files located within the Project Tracking System, the TeamMate application, and OA's Shared O: Drive); *id.* ¶ 44 (e-mails of an intelligence officer within OIE and OIE's Shared O: Drive), and the search terms utilized, *id.* ¶¶ 36, 44.  Furthermore, DHS OIG's declaration outlines the specific search it conducted of its public website to determine if any reports and/or other records might be located.  *Id.* ¶ 48.  DHS OIG's searches were reasonable and adequate and should be upheld.

### iv.    DHS I&A Conducted an Adequate Search

DHS I&A's searches were also reasonably designed to locate records responsive to Plaintiffs' Request.  DHS I&A's declaration outlines, in sufficient detail, why it chose to task its

---

[8] On October 10, 2024, Plaintiffs shared two publicly available reports that DHS OIG had either authored or contributed to as evidence that the Request should be referred to DHS OIG.  *Id.* ¶ 17. Because one of the reports was a DHS OIG audit report, DHS OIG determined it was reasonably likely that the Office of Audits ("OA") would have records potentially responsive to the Request. *Id.* ¶ 36.  Similarly, the second report was a DOJ OIG report that the Office of Inspections and Evaluations ("OIE") had contributed to.  *Id.* ¶ 43 n.9.  DHS OIG chose to search OIE as well.

Field Intelligence Directorate ("FID") with searching for documents. *See* Windham Decl. ¶ 8 ("FID represents the office within I&A that is responsible for liaison exchanges with federal and state partners and any human intelligence collection."); *id.* ¶ 13 ("FID is the office within I&A most likely to interact with JTTFs and Fusion Centers."). Moreover, DHS I&A had no basis to reasonably conclude that records responsive to Plaintiffs' Request would be found in another office within DHS I&A. *Id.*

DHS I&A's declaration describes, in sufficient detail, the locations searched by each of the ten FID regions. *Id.* ¶¶ 14, 16-17 (the emails and shared drives of each regional director). DHS DHS I&A also applied search terms that were reasonably calculated to identify responsive documents. *See id.* For example, the search for part 3 of the Request tracks the language of the Request itself. *Id.* ¶ 16. And because part 3 of the Request seeks definitions of terms as utilized by JTTFs and/or fusion centers, DHS I&A included the terms "defin!" and ("JTTF" OR "fusion center"). *Id.* Accordingly, DHS I&A's searches were reasonable and should be upheld.

*v.   DHS PRIV Conducted an Adequate Search*

As explained in DHS PRIV's declaration, DHS PRIV searched the offices that were reasonably likely to contain records responsive to Plaintiffs' Request. *See* Pavlik-Keenan Decl. ¶ 21 (noting OPE's role in documenting external collaborations); *id.* ¶ 22 (noting OSLLE's role in overseeing coordination between DHS and state/local agencies); *id.* ¶ 23 (noting that PLCY is charged with formulating and issuing policies); *id.* ¶ 24 (noting that Exec Sec maintains interdepartmental communications); *id.* ¶ 25 (noting that DHS PRIV ensures the protection of privacy, civil rights, and civil liberties).

Moreover, DHS PRIV searches within each office were reasonably designed to locate records responsive to Plaintiffs' Request. DHS PRIV's declaration outlines, in sufficient detail,

the locations searched by each office and the specific search terms utilized.  *See id.* ¶¶ 21-25 (listing extensive search terms that were applied by each office across emails, personal and electronic shared drives, and desktops).  DHS PRIV's searches were reasonable and adequate and should be upheld.

### C.  DOJ NSD Conducted an Adequate Search

DOJ NSD's declaration makes clear that its searches were reasonable and should be upheld.  First, DOJ NSD searched the locations that were reasonably likely to contain records responsive to Plaintiffs' request.  As explained in their declaration, DOJ NSD consulted on multiple occasions with SMEs to identify any offices and/or custodians that were reasonably likely to maintain potentially responsive records.  O'Dowd Decl. ¶ 10.  Specifically, the DOJ NSD consulted with an SME in DOJ NSD's Counterterrorism Section in light of the subject matter of Plaintiffs' Request. *Id.* ¶ 11.  DOJ NSD also consulted with personnel from DOJ NSD's litigation support unit, which has extensive knowledge and experience relating to locating and retrieving DOJ NSD's electronic records. *Id.* ¶ 13.  Finally, DOJ NSD consulted on a regular basis with its Supervisory Records Manager, who has been with DOJ NSD for nearly two decades and has extensive knowledge and experience with DOJ NSD's records. *Id.* ¶ 14.

Based on these consultations, DOJ NSD determined it was unlikely that it maintained records responsive to the Request because DOJ NSD's interactions with JTTFs and fusion centers are limited. *Id.* ¶ 15.  However, it was determined that if responsive records did exist, it was reasonably likely that they might be located by searching the emails of the leadership of the Counterterrorism Section and DOJ NSD's Law and Policy Section. *Id.*  The two most senior leaders of both sections were selected because "they were most likely to have been involved in any communication or discussion regarding the subject matter of [Plaintiffs'] request." *Id.*

14

Moreover, records maintained by DOJ NSD are almost exclusively maintained electronically. *Id.* DOJ NSD's declaration details the e-mails searched and terms used after consultation with SMEs. *See id.* ¶ 16 (listing terms). DOJ NSD's search was therefore reasonably designed to locate responsive records and should be upheld.

## II.    The Government's Assertions of Exemptions Are Justified

"Upon request, FOIA mandates disclosure of records held by a federal agency, unless the documents fall within enumerated exemptions." *Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 7 (2001). While FOIA is intended to promote government transparency, the FOIA exemptions are "intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

Here, the FBI withheld records pursuant to FOIA exemptions 3, 6, 7(C), and 7(E)[9]; ICE withheld records pursuant to FOIA exemptions 5, 6, 7(C), and 7(E); and DHS PRIV withheld records pursuant to FOIA exemptions 5 and 6.[10] As logically and plausibly explained below and in the Government's declarations, these withholdings were proper.

### iv.    Exemption 3

#### i.    Legal Standard

FOIA Exemption 3 protects material that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3)(A)(ii). When assessing whether Exemption 3 applies, a court must

---

[9] The FBI also consulted with DHS, the U.S. Marshal Service ("USMS"), the Office of the Director of National Intelligence, and the Transportation Security Administration ("TSA"). *See* Seidel Decl. ¶¶ 89-93. Those agencies' assertions of various exemptions are discussed to the extent not covered by the FBI's declaration.

[10] Plaintiffs have indicated that they are not challenging DHS PRIV's assertion of Exemption 6 to the extent it was applied to names, addresses, and telephone numbers, but reserves its right to challenge DHS PRIV's assertion of Exemption 6 to the extent it is applied to "agency affiliation." On information and belief, DHS PRIV has not applied Exemption 6 in this manner. It is therefore not addressed herein.

determine: (1) whether there is an applicable withholding statute, and (2) if so, whether the material withheld is within the statute's coverage. *C.I.A. v. Sims*, 471 U.S. 159, 167 (1985). Unlike other exemptions, the applicability of Exemption 3 depends "less on the detailed factual contents of specific documents" than on "the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley v. C.I.A.*, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (quotation marks omitted).

*ii.  Application by the FBI*

Here, the FBI withheld information pursuant to Exemption 3 because its release would contravene Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024 (the "NSA"), which provides that "the Director of National Intelligence shall protect, and shall establish and enforce policies to protect, intelligence sources and methods from unauthorized disclosure.'' Seidel Decl., ¶ 40 (quotation marks omitted). Notably, the NSA is a withholding statute for purposes of Exemption 3. *See, e.g., Sims*, 471 U.S. at 168.

Moreover, the withheld information falls properly within the scope of the NSA's requirement to protect intelligence sources and methods. The FBI withheld the following types of information pursuant to Exemption 3, at times in conjunction with 7(E): (1) investigative file numbers, Seidel Decl. ¶ 64; and (2) categorization of sensitive FBI investigations, *id.* ¶ 77. The FBI's investigative file numbers contain two-letter office of origin codes, indicating which FBI field office or overseas FBI legal attaché originated the investigations at issue. *Id.* ¶ 65. Releasing the FBI's investigative file numbers would provide critical information about where and how the FBI detects particular criminal behaviors or national security threats and reveal key information about the FBI's nonpublic intelligence gathering sources and methods. *Id.* Similarly, internal FBI policies establish which types of investigative techniques are authorized for use in certain types of

16

investigations.  *Id.*  ¶ 77.   Revealing how investigations are categorized would reveal the investigative "toolbox" available to the FBI in certain situations.  *Id.*  The FBI's withholding of investigative file numbers and categorization of sensitive FBI investigations therefore provide information about intelligence sources and methods under the NSA and should be upheld.[11]

> v.  <u>Exemption 5</u>

> iii.  *Legal Standard*

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Thus, Exemption 5 protects from disclosure agency documents "which would not be obtainable by a private litigant in an action against the agency under normal discovery rules." *Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002) (quotation marks omitted). Exemption 5 incorporates the full array of civil privileges, including the deliberative process privilege.  *See Grand Cent. P'ship*, 166 F.3d at 481.

An inter- or intra-agency document may be withheld pursuant to the deliberative process privilege if it is: "(1) predecisional, *i.e.,* prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the process by which policies are formulated." *Brennan Ctr. for Just. at N.Y Univ. Sch. of Law v. U.S. Dep't of Just.*, 697 F.3d 184, 194 (2d Cir. 2012) (quotation marks omitted).  The privilege "protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the

---

[11] TSA also withheld information pursuant to Exemption 3 in two pages of the FBI's release regarding mitigation measures in response to protest activity at airports because its release would contravene 49 U.S.C. § 114(r) and 49 C.F.R. § 1520.5(b)(8)(i).  Seidel Decl., Ex. P (Declaration of Christian Esteves), ¶ 5.  These statutes prohibit disclosure of information that constitutes sensitive security information.  These withholdings were therefore proper under Exemption 3.

personal opinions of the writer rather than the policy of the agency." *Grand Cent. P'ship*, 166 F.3d at 482.

iv.  *Application by DHS PRIV*

DHS PRIV withheld 8 pages in full and 21 pages in part pursuant to Exemption 5 and the deliberative process privilege.  *See* Pavlik-Keenan Decl. ¶¶ 30-34.  As detailed in DHS PRIV's declaration, the 8 pages withheld in full were draft remarks of the former Counterterrorism Coordinator and Assistant Secretary for Counterterrorism and Threat Prevention for the DHS Office of Strategy, Policy, and Plans, for a Congressional hearing.  *Id.* ¶ 30.  The draft remarks contained comments in track changes.  *Id.*

Similarly, DHS PRIV withheld portions of 21 additional pages pursuant to Exemption 5 that contained draft remarks and talking points with comments in track changes.  *Id.* ¶¶ 31-34. Notably, DHS PRIV released the non-exempt portions of the records at issue, such as the subject of the meeting, the logistics of the meeting, and background of the meeting.  *Id.* ¶ 34.  In addition, DHS PRIV identified the final versions of the withheld records where available.  *Id.*¶¶ 30, 32, 33. The information withheld by DHS PRIV—comments in track changes on draft remarks and talking points—are both predecisional and deliberative interagency communications.  *Id.* ¶ 35.  The draft comments were expressly provided to assist a decisionmaker in arriving at a decision on how to discuss certain topics.  *See Nat. Res. Def. Council v. United States Env't Prot. Agency*, 19 F.4th 177, 186 (2d Cir. 2021) (explaining that an agency's deliberations about how to communicate its policies fall within the deliberative process privilege).  There can be no question that the withheld comments "reflect the give-and-take of the consultative process," and are therefore deliberative. *See Brennan Ctr.*, 397 F.3d at 202 (quotation marks omitted). Similarly, the draft remarks themselves were also properly withheld.  *See Grand Cent. P'Ship*, 166 F.3d at 482 (noting that

draft documents that reflect personal opinions of the writer rather than the policy of the agency qualify for the deliberative process privilege). DHS PRIV's withholdings pursuant to Exemption 5 should be upheld.

v. *Application by ICE*

ICE also withheld 5 pages in part pursuant to Exemption 5. *See* Seidel Decl., Ex. N. As explained in ICE's declaration, ICE withheld internal discussions in e-mails relating to law enforcement plans and operations, including how to respond to incidents of threat. Pineiro Decl. p. 14, ¶ 41. More specifically, the discussions consisted of predecisional opinions of ICE employees who were deliberating about how law enforcement duties should be carried out. *Id.* This type of predecisional and deliberative discussion is covered by Exemption 5, and therefore should be upheld. *See generally Grand Cent. P'ship*, 166 F.3d at 482.

vi. Exemptions 6 and 7(C)

vi. *Legal Standard*

Exemption 6 exempts from disclosure information from personnel, medical, or other similar files where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from government records." *Id.* at 602.

To be protected, the individual's privacy interest must only be more than *de minimis*. *Long*, 692 F.3d at 191 ("[T]he bar is low: 'FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests.'"). Substantial privacy interests cognizable under

FOIA "includes such items as a person's name, address, place of birth, employment history, and telephone number." *Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 366 (S.D.N.Y. 2019).  If a privacy interest is found, it "must be weighed against the public interest that would be advanced by disclosure." *Long*, 692 F.3d at 193.  But the "only relevant public interest in disclosure to be weighed . . . is the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (quotation marks and citations omitted).  If the public interest is negligible, "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed'l Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

Exemption 7(C) is the law enforcement counterpart to Exemption 6: it permits the withholding of privacy information compiled for law enforcement purposes where its production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  In determining whether personal information is exempt from disclosure under Exemption 7(C), the Court must balance the public's need for this information against the individual's privacy interest. *See Assoc. Press v. U.S. Dep't of Def.*, 554 F.3d 274, 284 (2d Cir. 2009).  However, when the information at issue is the name of a third party that is merely mentioned in law enforcement files, the balance weighs heavily toward nondisclosure. *See Fitzgibbon v. C.I.A.*, 911 F.2d 755, 767 (D.C. Cir. 1990) ("[T]he mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation").

vii.    *Application by the FBI and ICE*

Here, the FBI's and ICE's withholdings pursuant to Exemptions 6 and 7(C) were proper.

As an initial matter, both the FBI and ICE compiled the responsive records released in this case for "law enforcement purposes."  Seidel Decl., ¶ 44; *see id.* ¶¶ 45-46 (explaining that the records concern policies and trainings to facilitate partnership with other law enforcement entities, which is in furtherance of the FBI's mission); Pineiro Decl. p. 15, ¶ 44.  Moreover, both the FBI and ICE limited their redactions pursuant to Exemptions 6 and 7(C) to names and personal identifying information of FBI Special Agents and professional staff, personnel from other federal agencies, and third parties, including third-party victims, individuals of investigative interest, and individuals with criminal records.  Seidel Decl. ¶¶ 51-60; *id.*, Ex. N; Pineiro Decl. ¶¶ 49 (noting redactions were limited to names, email addresses, phone numbers, and other personally identifiable information).

There is no cognizable public interest in the personal information that was withheld, including the identities of third parties whose names happen to appear in law enforcement files. *See Peltier v. F.B.I.*, 218 Fed. App'x 30, 32 (2d Cir. 2007) ("[D]isclosure of personal information about cooperating witnesses and other third parties advances no cognizable public interest under FOIA.").  The FBI's and ICE's withholdings pursuant to Exemptions 6 and 7(C) should be upheld.

vii.  <u>Exemption 7(E)</u>

  *viii.  Legal Standard*

Exemption 7(E) exempts from disclosure records that: (1) "would disclose techniques and procedures for law enforcement investigations or prosecutions"; or (2) "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *Allard K. Lowenstein Int'l Project v. U.S. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010).

  *ix.  Application by the FBI*

Here, the FBI properly applied Exemption 7(E) to: sensitive investigative file numbers,

Seidel Decl. ¶¶ 64-67; locations of FBI offices and corresponding units, squads, and divisions involved in JTTF investigations, *id.* ¶ 68-70; FBI internal e-mail addresses, non-public web addresses and telephone numbers, and internal e-mail tools, *id.* ¶ 71; methods used to collect and analyze information, *id.* ¶ 72; the focuses of specific investigations, *id.* ¶¶ 73-75; the types and dates of investigations, *id.* ¶¶ 76-78; identities of sensitive investigative databases and database search results, *id.* ¶¶ 79-83; details relating to the FBI's coordination with other government agencies and state/local law enforcement agencies, *id.* ¶ 84; sensitive training resources, *id.* ¶ 85; operational directives concerning sensitive investigative techniques, *id.* ¶ 86; and information regarding resource allocation for joint units, squads, and investigative activities across the JTTF program, *id.* ¶¶ 87-88. The FBI's declaration provides an in-depth, logical and plausible explanation as to why disclosure of the above-referenced types of information would disclose either law enforcement techniques or guidelines that if disclosed, could reasonably be expected to lead to circumvention of the law. *Id.* ¶¶ 64-88.

Courts have concluded that the types of information at issue here are properly withheld under Exemption 7(E). *See, e.g.*, *Radar Online LLC v. Fed. Bureau of Investigation,* 692 F. Supp. 3d 318, 359 (S.D.N.Y. 2023) (information collecting methods; investigative file numbers; type and dates of investigation)*; Freedom of Press Found. v. Dep't of Just.*, 493 F. Supp. 3d 251, 274 (S.D.N.Y. 2020) (internal e-mail; intranet addresses); *Gonzalez v. United States Citizenship & Immigr. Servs.,* 475 F. Supp. 3d 334, 352 (S.D.N.Y. 2020) (law enforcement file and event codes; URLs of law enforcement databases); *Lowenstein*, 626 F.3d at 681 (resource allocation)*.* Accordingly, the FBI is entitled to summary judgment on its withholdings under Exemption 7(E).[12]

---

[12] USMS also withheld information relating to the requirements for deputation of task force officers on two pages of the FBI's release pursuant to Exemption 7(E) because disclosure of that information could be "assembled to provide a framework to determine how the applications for

### x.  Application by ICE

As explained in ICE's declaration, ICE applied Exemption 7(E) to "law enforcement sensitive information pertaining to facilities" and "intranet website URLs."  Pineiro Decl. ¶ 57.  ICE has logically and plausibly explained that disclosure of that information could permit malicious actors to interfere with law enforcement operations.  *Id.*  ¶ 58.  Specifically, ICE explained that disclosure of law enforcement database links could lead to the manipulation of stored information by third parties, which would compromise the integrity of the database and thwart enforcement investigations.  *Id.*  As noted, courts have held that links to law enforcement databases are properly withheld under Exemption 7(E).  ICE is therefore entitled to summary judgment on its Exemption 7E withholdings.

### viii.  The Government Satisfied the Foreseeable Harm Requirement

In addition to determining that the withheld records or portions of records fall within one or more of the Exemptions discussed above, the Government also satisfied the foreseeable harm requirement.  Under FOIA, an agency can withhold information under a FOIA exemption only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or if disclosure is "prohibited by law."[13] 5 U.S.C. § 552(a)(8)(A); *see also Seife v. FDA*, 43 F.4th 231, 235 (2d Cir. 2022).  The Government's declarations demonstrate that disclosure of the exempt records would lead to foreseeable harms that the exemptions are designed to avoid.

With respect to Exemption 5, the DHS PRIV and ICE declarations make clear that if the records withheld under this exemption were disclosed, government employees would be discouraged from sharing their candid opinions, which would compromise the agencies' ability to

---

deputation are administer, which in turn could undermine the process." *See* Seidel Decl., Ex. O (Declaration of Kathleen Molen), ¶ 8. Withholding of this information was therefore also proper.
[13] "[T]he requirement does not apply to exemption 3." *James Madison Project v. Office of the Dir. of Nat'l Intel.*, 725 F. Supp. 3d 81, 90 n.6 (D.D.C. 2024).

make quality decisions.  *See* Pavlik-Kennan Decl. ¶ 37; Pineiro Decl. ¶ 42.  This is precisely the

harm that Exemption 5 was designed to prevent. *See Vaughn v. Rosen,* 523 F.2d 1136, 1146 (D.C.

Cir. 1975) ("[Exemption 5 was] designed to protect a true deliberative process usually leading up

to final decisions[.]").

        As for Exemptions 6 and 7(C), the FBI and ICE declarations explain why the disclosure of

personal identifying information of federal employees and third parties would potentially subject

the individuals to unwarranted attention, harassment, and potential harm.  Seidel Decl., ¶¶ 52-60;

Pineiro Decl. ¶¶ 50-52.  Disclosure would therefore foreseeably harm the interests protected by

Exemptions 6 and 7(C) in protecting against unwarranted invasions of personal privacy.

        Finally, with respect to Exemption 7(E), the FBI and ICE have explained in great depth

that disclosure of its non-public investigative techniques would risk circumvention of the law.[14]

*See, e.g.*, Seidel Decl. ¶ 67 (disclosure of investigative file numbers would allow criminals to

understand "where, who, what and how" the FBI investigates certain activities); *id.* ¶ 68

(disclosure of unit locations could allow criminals to avoid certain locations); *id.* ¶ 71 (disclosure

of internal emails could be used to facilitate cyber-attacks); ¶ 78 (disclosure of type/timing of

investigations could enable criminals time to circumvent the FBI); *see also id.* ¶¶ 64-66, 69-70,

72-77, 79-88; Pineiro Decl. ¶ 58 (disclosure of links to law enforcement databases could permit

bad actors to compromise the integrity of the database and interfere with investigations).  The FBI

---

[14] The Second Circuit has held that records containing information about law enforcement
techniques are exempt from FOIA disclosure "without need for demonstration of harm."
*Lowenstein*, 626 F.3d at 681 (quotations omitted).  However, the "foreseeable harm" requirement
was added by Congress after *Lowenstein*, and the impact on the reasoning of *Lowenstein* is not
clear.  Regardless, even if a showing of reasonably foreseeable harm is required, "Exemption 7(E)
sets a relatively low bar for the agency to justify withholding," and "only requires that the agency
demonstrate logically how the release of the requested information might create a risk of
circumvention of the law." *Blackwell v. F.B.I.*, 646. F.3d 37, 42 (D.C. Cir. 2011).

and ICE's declarations therefore show that disclosure would harm the interests protected by the exemption.

ix.    The Government Properly Segregated and Released Non-Exempt Portions of the Redacted Records

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). "[T]he law is clear that the reasonable segregation requirement of FOIA does not require [an agency] to commit significant time and resources to a task that would yield a product with little, if any, informational value." *Amnesty Int'l USA*, 728 F. Supp. 2d 479, 529 (S.D.N.Y. 2010) (quotation marks omitted).

Here, the FBI, ICE, and DHS PRIV attest that they conducted a line-by-line review of the produced records and segregated non-exempt information when it was not inextricably intertwined with exempt information. *See* Seidel Decl. ¶ 95; Pavlik-Keenan Decl. ¶ 37; Pineiro Decl. p. 19, ¶¶ 50-51. Accordingly, the Court should find that all "reasonably segregable portion[s]" of the responsive records have been provided to Plaintiffs. *See* 5 U.S.C. § 552(b).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' partial motion for summary judgment.

Dated:  New York, New York
        April 14, 2025

                                    Respectfully submitted,

                                    MATTHEW PODOLSKY
                                    Acting United States Attorney for the
                                    Southern District of New York
                                    *Attorney for Defendant*

                        By:     /s/ *Rebecca L. Salk*
                                    REBECCA L. SALK
                                    Assistant United States Attorney
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Tel: (212) 637-2614
                                    E-mail: rebecca.salk@usdoj.gov

26

<u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that this memorandum of law complies with the world limit outlined in Local Civil Rule 7.1(c).    According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted pursuant to Local Civil Rule 7.1(c) is 7862 words.


Dated: New York, New York
          April 14, 2025

                                        By:      <u>/s/ *Rebecca L. Salk*        </u>
                                                 REBECCA L. SALK
                                                 Assistant United States Attorney
                                                 86 Chambers Street, 3rd Floor
                                                 New York, New York 10007
                                                 Tel: (212) 637-2614
                                                 E-mail: rebecca.salk@usdoj.gov