UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>    Plaintiffs,<br><br>                    v.<br><br>DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, AND DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendants. | Civil Action No. 24-cv-5722 (JSR) |

# **<u>Exhibit A</u>**

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2024-05-21T16:26:21.569367+00:00 Status: sent Message:

## Organization Representative Information

| | |
|---|---|
| **Organization Name** | American Civil Liberties Union |
| **Prefix** | |
| **First Name** | Aamra |
| **Middle Name** | |
| **Last Name** | Ahmad |
| **Suffix** | |
| **Email** | aahmad@aclu.org |
| **Phone** | 2024570800 |
| **Location** | United States |

## Domestic Address

| | |
|---|---|
| **Address Line 1** | 915 15th Street NW |
| **Address Line 2** | |
| **City** | Washington |
| **State** | District of Columbia |
| **Postal** | 20005 |

## Agreement to Pay

| How you will pay | I am requesting a fee waiver for my request and have reviewed the FOIA reference guide. If my fee waiver is denied, I am willing to pay additional fees and will enter that maximum amount in the box below. |
|---|---|

| Allow up to $ | 100 |
|---|---|

## Proof Of Affiliation for Fee Waiver

| Waiver Explanation | The ACLU requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). Please see the attached FOIA request for further details. |
|---|---|

| Documentation Files | |
|---|---|

## Non-Individual FOIA Request

| Request Information | The ACLU requests all final policies, guidance, procedures, directives, advisories, memoranda, agreements, training materials, legal opinions, and/or records created January 20, 2017 to the present, pertaining to (1) the extent to which JTTFs and fusion centers (a) monitor and collect information on people engaged in protest activity and/or (b) associate protest with "terrorism," and (2) whether their privacy, civil rights, and civil liberties policies are adequate to guard against abuses and discrimination. Please see the attached FOIA request for further details of requested records. |
|---|---|

## Expedite

| Expedite Reason | The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C.§ 552(a)(6)(E)(v)(II). Please see the attached FOIA request for further details. |
|---|---|

**

Please be advised that efoia@subscriptions.fbi.gov is a no-reply email address. Questions regarding your FOIA request may be directed to foipaquestions@fbi.gov. If you have received a FOIPA request number, please include this in all correspondence concerning your request. Please note eFOIPA requests are processed in the order that they are received. If you have not received a FOIPA request number, your request is in the process of being opened at which time it will be assigned a FOIPA request number and correspondence will be forthcoming.

**

Upon receipt of your FOIPA request number, you may check the status of your FOIPA request on the FBI's electronic FOIA Library (The Vault) on the FBI's public website, http://vault.fbi.gov by clicking on the 'Check Status of Your FOI/PA Request tool' link. Status updates are performed on a weekly basis. If you receive a comment that your FOIPA request number was not located in the database, please check back at a later date.

----END MESSAGE----



**Aamra Ahmad**
Senior Staff Attorney
National Security Project
ACLU National Legal Department

May 21, 2024

Federal Bureau of Investigation
Attn: FOIA/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

Arnetta Mallory
FOIA Initiatives Coordinator
National Security Division
Department of Justice
Room 6150
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Privacy Office, Mail Stop 0655
Department of Homeland Security
2707 Martin Luther King Jr. Ave. SE
Washington, D.C. 20528-065

**Re:    Request Under Freedom of Information Act Concerning Joint
Terrorism Task Forces and Fusion Centers (Expedited Processing
and Fee Waiver Requested)**

To Whom It May Concern:

This letter constitutes a request ("Request") pursuant to the Freedom of
Information Act ("FOIA"), 5 U.S.C. § 552 et seq., and its implementing regulations.[1]
The Request is submitted by the American Civil Liberties Union and the American
Civil Liberties Union Foundation (together, the "ACLU").[2] The Request seeks

---

[1] *See* 28 C.F.R. § 16 et seq. (Federal Bureau of Investigation, National Security Division); 6 C.F.R. §
5.1 et seq. (Department of Homeland Security).

[2] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that
provides legal representation free of charge to individuals and organizations in civil liberties cases
and educates the public about civil rights and civil liberties issues across the country. The American



information from the Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), and the Department of Homeland Security ("DHS") pertaining to the use of Joint Terrorism Task Forces ("JTTFs") and fusion centers to investigate, collect, and disseminate information on people engaged in protest and communities of color, and the adequacy of the privacy, civil rights, and civil liberties safeguards that apply to them.

JTTFs are FBI-operated task forces that establish formal partnerships between the FBI, state and local law enforcement agencies, and other federal law enforcement and intelligence agencies to conduct terrorism investigations. There are about 200 JTTFs throughout the country, including "at least one in each of the FBI's 56 field offices."[3] Fusion centers are a network of 80 state-run entities developed and supported by DHS as intelligence hubs to collect and disseminate counterterrorism and other alleged criminal information.[4] They receive funding, training, personnel, and other support from DHS.[5]

The public has little information about how either of these initiatives work and what privacy, civil rights, and civil liberties safeguards apply to them. This lack of information is also concerning because of credible media reports that JTTFs and fusion centers have been used to wrongly target protestors, communities of color, and those engaged in dissent.[6]

---

Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[3] FBI, *Joint Terrorism Task Forces*, https://perma.cc/6G6B-CGEG (last visited May 15, 2024).

[4] *See* Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110–53, § 511, 121 Stat. 317, 318–24 (2007), https://perma.cc/VM7U-B6A8; Staff of S. Perm. Subcomm. on Investigations, 112th Cong., Federal Support for and Involvement in State and Local Fusion Centers 12 (2012) ("Senate Fusion Centers Report"), https://perma.cc/K6VB-7RDH.

[5] *See, e.g.*, DHS, *National Network of Fusion Centers Assessment* (2021), https://perma.cc/VX55-Q6A2; John Rollins, Cong. Research Serv., RL34070, Fusion Centers: Issues and Options for Congress 41–42, 47 (updated Jan. 18, 2008), https://perma.cc/JRJ8-NXWB; Senate Fusion Centers Report at 20.

[6] *See, e.g.*, Mara Hvistendahl, *Austin Fusion Center Spied on Nonpolitical Cultural Events*, Intercept (Nov. 30, 2020), https://theintercept.com/2020/11/30/austin-fusion-center-surveillance-black-lives-matter-cultural-events/; Alex Kane, *The FBI is Using Unvetted, Right-Wing Blacklists to Question Activists About Their Support for Palestine*, Intercept (June 24, 2018), https://theintercept.com/2018/06/24/students-for-justice-in-palestine-fbi-sjp/; Jana Winter & Sharon Weinberger, *The FBI's New U.S. Terrorist Threat: 'Black Identity Extremists'*, Foreign Pol'y (Oct. 6,



This Request seeks information to educate the public about (1) the extent to which JTTFs and fusion centers (a) monitor and collect information on people engaged in protest activity and/or (b) associate protest with "terrorism," and (2) whether their privacy, civil rights, and civil liberties policies are adequate to guard against abuses and discrimination.

## I.    Background

JTTFs and fusion centers have a long track record of surveilling and disseminating information on First Amendment-protected activity without a nexus to criminal conduct. Both the FBI and DHS should have appropriate policies to protect the public's privacy, civil rights, and civil liberties when JTTFs and fusion centers conduct their activities.

JTTFs have a history of targeting social justice protesters without establishing a connection to wrongdoing. For example, in 2014, JTTFs targeted racial justice protesters in Minnesota and New York for surveillance after the police killings of Michael Brown and Eric Garner.[7] During widespread protests for racial justice in 2020, precipitated by the police killings of George Floyd and other Black people, DOJ directed JTTFs to shift their focus to identifying "instigators" associated with the protests.[8] In one such investigation, a Colorado Springs JTTF participant posed undercover as a racial justice protester for over a year to spy on local protesters and attempt to entice them to commit firearm offenses.[9]

Fusion centers around the country have collected and disseminated information on protest activity and protesters, even absent any allegation of

2017), https://perma.cc/Q2E9-6ZGF; Sam Levin, *Revealed: FBI Terrorism Taskforce Investigating Standing Rock Activists*, Guardian (Feb. 10, 2017), https://perma.cc/Y8FC-J287; Lee Fang, *Why Was an FBI Joint Terrorism Task Force Tracking a Black Lives Matter Protest?*, Intercept (Mar. 12, 2015), https://theintercept.com/2015/03/12/fbi-appeared-use-informant-track-black-lives-matter-protest/.

[7] Fang, *supra* note 6; Alex Kane, *How the NYPD's Counterterrorism Apparatus Is Being Turned on Protestors*, Vice (Jan. 19, 2015), https://perma.cc/4MYG-745C.

[8] Att'y Gen. William Barr, *Statement to Federal and Local Law Enforcement Roundtable* (Jul. 9, 2020), YouTube, https://perma.cc/RVH3-3Q4B; Greg Walters, *Trump's Feds Are Reviewing 'All' the Footage of 2020 Unrest for Possible Crimes*, Vice (Sept. 2, 2020), https://perma.cc/RR2R-RKU7; Press Release, Off. of Pub. Aff., DOJ, Attorney General William P. Barr's Statement on Riots and Domestic Terrorism (May 31, 2020), https://perma.cc/9WR4-6YVV.

[9] Trevor Aaronson, *The Honey Trap: The FBI Used an Undercover Cop with Pink Hair to Spy on Activists and Manufacture Crimes*, Intercept (May 30, 2020), https://theintercept.com/2023/03/21/fbi-colorado-springs-surveillance/.



wrongdoing. For example, in 2019, a fusion center in Iowa partnered with the FBI to run a drill to prepare for a purported wind farm attack by environmental activists, but both the fusion center and the FBI later issued reports admitting there was no evidence to substantiate that environmental advocates intended to commit such an attack.[10] In another instance, in 2023, a fusion center in Missouri issued a bulletin to law enforcement partners that sought to connect environmentalists with violence by claiming that a new movie based on a fictional plot to bomb a pipeline could "inspire" environmentalists to engage in violence against critical infrastructure—even as the bulletin conceded that there was "no information on specific threats" to infrastructure.[11] Similarly, in Colorado in 2023, a fusion center issued a bulletin warning of a student walkout to protest gun violence without any evidence that the walkout raised any legitimate safety concern meriting law enforcement scrutiny.[12] And in Virginia, a fusion center sensationalized the activity of environmental activists opposed to the construction of a pipeline by issuing an intelligence assessment equating the activists' tactics, which included ignoring law enforcement's commands and threatening to boycott a local business patronized by pipeline workers, with bombings and other acts of physical violence committed by designated foreign terrorist organizations against the U.S. military.[13]

JTTFs and fusion centers also have a history of wrongfully targeting and infiltrating communities of color. For example, after 9/11, the FBI used JTTFs to conduct widespread "voluntary" interviews in Muslim communities during which

---

[10] Alleen Brown, *Tilting at Windmills: The FBI Chased Imagined Eco-Activist Enemies, Documents Reveal*, Intercept (Aug. 24, 2020), https://theintercept.com/2020/08/24/fbi-fusion-center-environmental-wind/.

[11] Ken Klippenstein, *"How to Blow Up a Pipeline" Movie Poses Terror Threat, Kansas City Intel Agency Claims*, Intercept (Apr. 11, 2023), https://theintercept.com/2023/04/11/how-to-blow-up-a-pipeline-movie/.

[12] Ken Klippenstein, *Tasked with Stopping Terror, Colorado's Intel Agency Monitors Students Protesting Gun Violence*, Intercept (Apr. 5, 2023), https://theintercept.com/2023/04/05/colorado-student-gun-violence-protest/.

[13] Brown, *supra* note 10; Virginia Fusion Center, *VFC Intelligence Assessment 19-04: Criminal Environmental Groups Study and Adopt Militant Insurgent Strategies to Advance Goals in Virginia* (Sept. 3, 2019), https://www.documentcloud.org/documents/7040982-Virginia-Fusion-Center-Criminal-Environmental.html [https://bit.ly/44Rn7CY].



agents asked people about their political beliefs.[14] In Chicago, a fusion center disseminated numerous Suspicious Activity Reports describing males who "appeared Middle Eastern" or "Arabic" and were engaged in the First Amendment-protected activity of taking photographs or saying the word "jihad," which in Islam can refer to spiritual or personal struggle.[15] More recently, some states have asserted an increased reliance on information-sharing through fusion centers and resource allocation to JTTFs to monitor local communities and protesters in response to the Israel-Gaza conflict.[16]

Despite the ongoing risks posed to privacy, civil rights, and civil liberties, JTTFs and fusion centers remain secretive and subject to scant oversight and accountability. JTTFs, for example, have been in operation since at least 1980,[17] but their impact on privacy and civil rights and liberties has not been meaningfully evaluated by Inspector Generals, Congress, or other federal entities.[18] The absence of meaningful public and congressional oversight is especially troubling since FBI task forces, including JTTFs, are structured to deputize state and local law enforcement participants as federal agents, and can thereby shield them from local

[14] *E.g.*, Jodi Wilogren, *A Nation Challenged: The Interviews; Michigan 'Invites' Men from Mideast to Be Interviewed*, N.Y. Times (Nov. 27, 2001), https://www.nytimes.com/2001/11/27/us/nation-challenged-interviews-michigan-invites-men-mideast-be-interviewed.html; Mary Beth Sheridan, *Interviews of Muslims to Broaden*, Wash. Post (Jul. 16, 2004), https://perma.cc/4HYV-M28E.

[15] Open the Gov't, *The Cost of Fear: Long-Cited Abuses Persist at U.S. Government-Funded Post-9/11 Fusion Centers* (Apr. 10, 2020), https://www.openthegovernment.org/dhs-fusion-centers-full-report/ [https://bit.ly/3QWmpOZ].

[16] Press Release, Kathy Hochul, Governor, N.Y. State, Following Increase in Hate and Bias Incidents, Governor Hochul Deploys Additional Staff to Joint Terrorism Task Force (Nov. 13, 2023), https://perma.cc/7N58-VJM3; *Massachusetts Authorities Prepared for Any Possible Israel, Hamas War Protests*, WCVB/ABC News (Oct. 13, 2023), https://perma.cc/6HUC-GMLK; Press Release, Greg Abbott, Governor, State of Tex., Governor Abbott Vows Unwavering Support for Israel Amid Act of War (Oct. 9, 2023), https://perma.cc/34JF-YZRG.

[17] Off. of Inspector Gen., DHS, *Coordination Between FBI and ICE on Investigations of Terrorist Financing*, at 3 (July 2007), https://perma.cc/5JD3-WLMM.

[18] Publicly available reports and investigations related to the work of JTTFs have so far not set out to consider the privacy, civil rights, and civil liberties impacts. *See generally* Off. of Inspector Gen., DHS, *HSI Effectively Contributes to the FBI's Joint Terrorism Task Force, but Partnering Agreements Could be Improved* (Aug. 13, 2020), https://perma.cc/K2TT-67GM; Off's. of Inspector Gen., Intelligence Community, DHS & DOJ, *Review of Domestic Sharing of Counterterrorism Information* (Mar. 2017), https://perma.cc/FJ8G-M7R3; Off. of Inspector Gen., DOJ, *The FBI's Compliance with the Attorney General's Investigative Guidelines* (Sept. 2005), https://perma.cc/E3CC-BMRW.



and state laws protecting civil rights and civil liberties.[19] Indeed, police forces in a few of the nation's largest cities have chosen to leave FBI task forces because of disputes with federal officials over transparency and accountability for abuses.[20]

Fusion centers similarly operate absent sufficient transparency and oversight. The only meaningful effort to conduct oversight of fusion centers was conducted by the U.S. Senate Permanent Subcommittee on Investigations over a decade ago. That 2012 investigation revealed that DHS's Office of Civil Rights and Civil Liberties had already made findings that DHS intelligence officials working at fusion centers had "overstepped legal boundaries" by "[r]eporting on First Amendment-protected activities lacking a nexus to violence or criminality; improperly characterizing political, religious or ideological speech that is not explicitly violent or criminal; and attributing to an entire group the violent or criminal acts of one or a limited number of the group's members."[21] The Subcommittee's independent two-year investigation similarly concluded that fusion centers' reports were "oftentimes shoddy," "sometimes endangering citizens' civil liberties and Privacy Act protections," and "more often than not unrelated to terrorism."[22]

In 2023, DOJ updated its nondiscrimination guidance,[23] and DHS adopted that same guidance pending a new department policy.[24] The DOJ nondiscrimination guidance applies to federal personnel, joint operations, and all federal task force participants, including state and local officers,[25] which would include JTTFs. It is

---

[19] *See* Simone Weichselbaum, *Why Some Police Departments Are Leaving Federal Task Forces*, Marshall Project (Oct. 31, 2019), https://perma.cc/C8FQ-UJJ8.

[20] *Id.* (describing "clashes" between local law enforcement agencies and federal authorities after state and local officers working on federal task forces were shielded from accountability and transparency for shootings in Atlanta, Austin, and Albuquerque, including two that resulted in death).

[21] Senate Fusion Centers Report at 36.

[22] *Id.* at 1.

[23] *See* DOJ, *Guidance for Law Enforcement Agencies Regarding the Use of Race, Ethnicity, Gender, National Origin, Religion, Sexual Orientation, Gender Identity, and Disability* (May 2023) ("DOJ Nondiscrimination Guidance"), https://perma.cc/7AYH-P3F9.

[24] Mem. from DHS Sec'y Alejandro Mayorkas to DHS Agency and Off. Leaders, *Reaffirming the Commitment to Nondiscrimination in Department of Homeland Security Activities* (May 25, 2023), https://perma.cc/WV4G-95H6.

[25] DOJ Nondiscrimination Guidance at 2, 14.



unclear if and how this guidance applies to DHS-funded and supported fusion centers.

Although an improvement over previous guidance, the 2023 DOJ nondiscrimination guidance contains loopholes that permit national and homeland security and law enforcement agencies to rely on protected characteristics in their investigative and intelligence gathering activity.[26]  The public needs to know if and how the 2023 guidance has been applied to and by JTTFs and fusion centers, and whether it is effective at protecting safeguarding rights and preventing discrimination.

It is critical that the public understand the nature of federal, state, and local collaboration in monitoring people engaged in dissent and its impact on privacy and civil rights and liberties.

### II.    Records Requested

1.    All final policies, guidance, procedures, directives, advisories, memoranda, agreements, training materials, and/or legal opinions created from January 20, 2017 to the present, pertaining to:

    a.  The use of JTTFs and/or fusion centers to collect information about, monitor, surveil, observe, question, interrogate, and/or investigate individuals or organizations engaged in protest;

    b.  The activities and/or predicate criteria that trigger JTTF and/or fusion center involvement, including the legal justification and/or factual showing required;

    c.  Intra-agency correspondence and correspondence among federal, state, and local law enforcement agencies pertaining to monitoring, surveilling, observing, questioning, interrogating, and/or otherwise investigating individuals or groups engaged in protest through or by JTTFs and/or fusion centers;

    d.  The collection, storage, use, and/or dissemination of data (including photographs, videos, and electronic surveillance records) obtained during and/or in connection with monitoring of individuals or groups engaged in protest through or by JTTFs and/or fusion centers; and

---

[26] *See, e.g.*, Letter from ACLU, Brennan Ctr. for Just., NAACP Legal Def. and Educ. Fund, and Leadership Conf. on Civ. & Hum. Rts. to Lisa O. Monaco, Deputy Att'y Gen., DOJ, *Concerns About DOJ's 2023 Racial Profiling Guidance*, 2 (Oct. 21, 2023), https://perma.cc/H63H-6S4C.



AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

    e.  JTTFs and fusion centers' protection of privacy, civil rights, and civil liberties.

2.    Records created from January 20, 2017 to the present, indicating:

    a.  The number of individuals whose activities have been investigated through or by JTTFs and/or fusion centers in connection with protests; and

    b.  The number and names of groups whose activities have been investigated through or by JTTFs and/or fusion centers in connection with protests; and

3.    Records created from January 20, 2017, to the present concerning the definition of the following terms as used and applied by JTTFs and/or fusion centers:

    a.  "Racially or Ethnically Motivated Violent Extremism";[27]

    b.  "Anti-Government or Anti-Authority Violent Extremism";[28]

    c.  "Animal Rights or Environmental Violent Extremism";[29]

    d.  "All Other Domestic Terrorism Threats";[30]

    e.  "Abortion-Related Violent Extremism";[31]

    f.  "Domestic violent extremism";[32]

    g.  "Domestic terrorism";[33]

    h.  "Anarchist violent extremism";[34]

    i.  "Radical agitators";[35]

---

[27] FBI & DHS, *Strategic Intelligence Assessment and Data on Domestic Terrorism*, 4–5 (June 2023), https://perma.cc/6M9P-3H55.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] Alleen Brown, *Federal Agencies Pushed Extreme View of Cop City Protesters, Records Show*, Guardian (Dec. 6, 2023), https://perma.cc/SB2R-6MDD; Adam Federman, *How the FBI Used Cop City Protests to Snoop on Activists in Chicago*, Grist (Mar. 23, 2023), https://perma.cc/8HAY-ZWHH.

[35] Press Release, Off. of Pub. Aff., DOJ, Attorney General William P. Barr's Statement on Riots and Domestic Terrorism (May 31, 2020), https://perma.cc/9WR4-6YVV.

8



j.   "Criminal organizers and instigators";[36]
k.   "Violent instigators";[37]
l.   "Antifa";[38] and
m.   "Far-left extremists."[39]

4.   Records describing the process and/or procedures individuals may use to find out whether and what information about themselves has been collected and maintained by JTTFs and fusion centers, and the process by which any inaccurate information may be challenged and expunged.

* * *

Where a document contains information that falls into one or more of the categories described above, the ACLU seeks the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

With respect to the form of production, the ACLU requests that responsive electronic records be provided electronically in their native file format. See 5 U.S.C. § 552(a)(3)(B). Alternatively, the ACLU requests that the records be provided electronically in a text- searchable, static-image format (PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

### III.   Request for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[40] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C.§ 552(a)(6)(E)(v)(II).

---

[36] *Id.*

[37] Press Release, Off. of Pub. Aff., DOJ, Attorney General William P. Barr's Remarks on Mr. George Floyd and Civil Unrest (June 4, 2020), https://perma.cc/UA9Y-NWZ9.

[38] *Id.*

[39] Phil McCausland, *Attorney General Barr Blames 'Far-Left Extremist Groups' for Violent Protests* (May 30, 2020), https://perma.cc/W8K6-83CW.

[40] *See also* 28 C.F.R. § 16.5(e) (DOJ, FBI); 6 C.F.R. § 5.5(e) (DHS).

9



A. <u>The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.</u>

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II).[41] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[42]

The ACLU regularly publishes ACLU magazine, which reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 900,000 people. The ACLU also publishes regular updates and alerts via email to over 4.8 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 6.6 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[43] and ACLU

---

[41] *See also* 28 C.F.R. § 16.5(e)(1)(ii) (DOJ, FBI); 6 C.F.R. § 5.5(e)(1)(ii) (DHS).

[42] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." See, e.g., *Leadership Conference on Civil Rts. v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[43] *See, e.g.*, Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://perma.cc/TA87-2TQ8; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://perma.cc/V2H6-4GHH; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://perma.cc/LY5L-BYF6; Press Release, ACLU, Privacy International Demand Government Disclose Nature and Extent of Hacking Activities (Dec. 21, 2018), https://perma.cc/WJ4J-KRD8; Press Release, ACLU, New Documents Reveal Government Plans to Spy on Keystone XL Protesters (Sept. 4, 2018), https://perma.cc/TD8G-9QYV; Press Release, ACLU, ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody (May 22, 2018), https://perma.cc/K5TJ-8CLN; Press Release, ACLU, ACLU Demands CIA Records on Campaign Supporting Haspel Nomination (May 4, 2018), https://perma.cc/8LXC-G2LL; Press Release, ACLU, Advocates File FOIA Request For ICE



attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[44]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[45] The ACLU also regularly publishes

---

Documents on Detention of Pregnant Women (May 3, 2018), https://perma.cc/ZR44-CDND; Press Release, ACLU, Civil Rights Organizations Demand Police Reform Documents from Justice Department (Jan. 4, 2018), https://perma.cc/D7AY-ZVY5; Press Release, ACLU, ACLU Files Lawsuits Demanding Local Documents on Implementation of Muslim Ban (Apr. 12, 2017), https://perma.cc/2DDL-6T92; Press Release, ACLU, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://perma.cc/VA4D-SRF6; Press Release, ACLU, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://perma.cc/MGA4-H72E; Press Release, ACLU, ACLU Sues for Bureau of Prisons Documents on Approval of CIA Torture Site (Apr. 14 2016), https://perma.cc/Y3GA-9X69; Press Release, ACLU, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://perma.cc/Z96W-3V6S.

[44] *See, e.g.*, Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times (June 26, 2019), https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU deputy project director Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill (Mar. 21, 2019), https://perma.cc/ZZ69-BFCE (quoting former ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://perma.cc/XC6A-NR8T (quoting former ACLU attorney Hugh Handeyside); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, https://perma.cc/9EY3-Y827 (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, https://perma.cc/TK4G-MFMC (quoting former ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://perma.cc/76B8-4ZUT (quoting ACLU deputy project director Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, https://perma.cc/P9Z6-HA4Z (quoting ACLU project director Hina Shamsi).

[45] *See, e.g.*, ACLU, *Bad Trip: Debunking the TSA's 'Behavior Detection' Program* (2017), https://perma.cc/7HK6-8BPD; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site*, ACLU (Nov. 22, 2016), https://perma.cc/B8YM-9YUD; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most*, ACLU (Aug. 8, 2016), https://perma.cc/6G59-L2AE; ACLU, *Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative* (2016), https://perma.cc/JCR6-578D; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida*, ACLU (Feb. 22, 2015), https://perma.cc/Z9F9-RAW3; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights*, ACLU (Oct. 30, 2015),



books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. See https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. See https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.[46]

The ACLU website includes many features on information obtained through the FOIA. The ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct

---

https://perma.cc/6579-K84Z; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333*, ACLU (Oct. 30, 2014), https://perma.cc/E6J5-XVMN.

[46] *See, e.g.*, *ACLU v. ODNI – FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act*, ACLU (Apr. 2, 2019), https://perma.cc/88CJ-CDHS; *ACLU v. DOJ – FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media*, ACLU (Mar. 26, 2019), https://perma.cc/Y6S4-R2LB; *ACLU v. DOJ – FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties*, ACLU (Apr. 23, 2019), https://perma.cc/ZXR8-XN2N; *Executive Order 12,333 – FOIA Lawsuit*, ACLU (Dec. 3, 2018), https://perma.cc/XA5U-3EA4; *ACLU v. United States*, ACLU (Nov. 1, 2021), https://perma.cc/AKJ4-VK8G (ACLU motions requesting public access to FISA court rulings on government surveillance); *ACLU v. DOJ – FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements*," ACLU (Apr. 6, 2016), https://perma.cc/8MM7-BM4L; *FOIA Request for Justice Department Policy Memos on GPS Location Tracking*, ACLU (Mar. 12, 2014), https://perma.cc/4YLP-DHE6; *Florida Stingray FOIA*, ACLU (Feb. 22, 2015), https://perma.cc/3C9Q-F9CG; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida*, ACLU (Feb. 22, 2015), https://perma.cc/3WDP-T43Z.



sophisticated searches of its contents relating to government policies on rendition, detention, and interrogation.[47] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.[48]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

B. <u>The records sought are urgently needed to inform the public about actual or alleged government activity.</u>

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the use of JTTFs and fusion centers to investigate protesters and communities of color raises significant privacy, civil rights, and civil liberties concerns. *See supra* Section I. Yet, there is little publicly-available information about how JTTFs and fusion centers gather, use, and disseminate information and data and the existence or effectiveness of any safeguards that are in place.

Specifically, the public does not know what activities JTTFs and fusion centers are engaging in; who they are targeting and how these targets are selected; what role state and local law enforcement entities are playing; and whether adequate safeguards are in place to ensure that protestors' liberties and rights are protected. Thus, timely access to information regarding JTTF and fusion center practices and policies to protect privacy, rights, and liberties is urgently needed to inform the public about this government activity, which has potentially far-reaching implications.

---

[47] *The Torture Database*, ACLU, https://perma.cc/KVQ8-PWN4 (last visited Dec. 7, 2022); *see also Countering Violent Extremism FOIA Database*, ACLU, https://perma.cc/2LJ8-Y6CR (last visited Dec. 7, 2022); *TSA Behavior Detection FOIA Database*, ACLU, https://perma.cc/G4YR-SM9Z (last visited Dec. 7, 2022); *Targeted Killing FOIA Database*, ACLU, https://perma.cc/C5C5-QD7U (last visited Dec. 7, 2022).

[48] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://perma.cc/885E-XY3K; *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU (Nov. 29, 2010), https://perma.cc/XP5V-8QRF; *Statistics on NSLs Produced by Department of Defense*, ACLU, https://perma.cc/G6BN-QQSR (last visited Dec. 7, 2022).



## IV.    Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). [49] The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.    The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.

As discussed above, credible media and other investigative accounts underscore the substantial public interest in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of an issue of profound public importance. Because limited information about the JTTFs is publicly available, the records sought are certain to contribute significantly to the public's understanding of the scope of involvement of these counter-terrorism tools in policing domestic protests.

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. See *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.    The ACLU is a representative of the news media and the records are not sought for commercial use.

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because

---

[49] See also 28 C.F.R. § 16.10(k)(2) (FBI, NSD); 6 C.F.R. § 5.11(b) (DHS).



AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[50]; see also *Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. See, e.g., *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[51]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[52] As

---

[50] *See also* 28 C.F.R. § 16.10(b) (FBI, NSD); 6 C.F.R. § 5.11(b)(6) (DHS).

[51] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information/public education activities. See, e.g., *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d; *Nat'l Sec. Archive*, 880 F.2d at 1387; see also *Leadership Conference on Civil Rts.*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[52] The ACLU regularly receives FOIA fee waivers from federal agencies. For example, in June 2018, the U.S. Citizenship and Immigration Services granted a fee-waiver request regarding a FOIA



AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

was true in those instances, the ACLU meets the requirements for a fee waiver here.

* * *

Pursuant to applicable statute and regulations, we expect a determination regarding expedited processing within ten (10) calendar days. See 5 U.S.C. § 552(a)(6)(E)(ii)(I); 28 C.F.R. § 16.5(e)(4) (FBI, NSD); 6 C.F.R. § 5.5(e)(4) (DHS).

If the request is denied in whole or in part, the ACLU asks that you justify all withholdings by reference to specific exemptions to FOIA. The ACLU also asks that you release all segregable portions of otherwise exempt material in accordance with 5 U.S.C. § 552(b). Furthermore, if any documents responsive to this request are classified, please identify those documents, including a date and document number where possible, so we may begin the process of requesting a Mandatory Declassification Review under the terms of Executive Order 13,526. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Please send all correspondence and records relating to this request to Aamra Ahmad at aahmad@aclu.org

I certify that the foregoing information provided in support of the request for expedited processing is true and correct to the best of my knowledge and belief.

---

request for documents relating to the use of social media surveillance. In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In June 2017, the Department of Defense granted a fee-waiver request regarding a FOIA request for records pertaining to the authorities approved by President Trump in March 2017 which allowed U.S. involvement in Somalia. In June 2017, the Department of Defense, the CIA, and the Office of Inspector General granted fee-wavier requests regarding a FOIA request for records pertaining to U.S. involvement in the torture of detainees in prisons in Yemen, Eritrea, and aboard Yemeni or Emirati naval vessels. In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, the CIA and the Department of State granted fee-waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In June 2016, the Office of the Director of National Intelligence granted a fee-waiver request regarding a FOIA request related to policies and communications with social media companies' removal of "extremist" content. In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the Department of Justice for documents related to Countering Violent Extremism Programs.



Executed on the 21st day of May, 2024.

Sincerely,

Aamra Ahmad
Senior Staff Attorney
National Security Project
American Civil Liberties Union
Foundation
915 15th Street NW
Washington, D.C. 20005
Tel: (202) 457-0800
aahmad@aclu.org

17