UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION AND
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

     Plaintiffs,

                  v.

DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF INVESTIGATION, AND
DEPARTMENT OF HOMELAND SECURITY,

     Defendants.

Civil Action No. 24-cv-5722 (JSR)

# **<u>Exhibit G</u>**



Description of Appeal

> This request pertains to Request Numbers NFP-161243, NFP-161245, NFP-161247, and 1637191-000. The FBI fails to justify its response that the ACLU's request is over broad, especially when the request reasonably describes the records sought. The FBI has provided no explanation as to why Category 2 of the Request requires it to respond to inquiries, create records, conduct research or draw conclusions, especially when the Request only asks the FBI to search for responsive records. The FBI does not explain why it cannot search its databases for records responsive to Category 3 of the Request, or why the Request requires it to respond to inquiries, create records, conduct research or draw conclusions. The FBI is required to conduct an adequate search and process records responsive to Category 4 of he Request. Please see attached.

Based on Denial of Fee Waiver          ○ Yes ● No
Based on Denial of Expedited            ○ Yes ● No
Processing
Requester Item Type 1          [ Supplemental Information ▾ ]

Requester Items 1          📎 2024.06.26 FBI Admin Appeal.pdf   [ Replace | Remove ]
Requester Item Type 2          [ ▾ ]

Requester Items 2          [                    ]

Requester Item Type 3          [ ▾ ]

Requester Items 3          [                    ]

**Requester Contact Information**

🔍 Search Requester

| | | |
|---|---|---|
| Salutation | [ ▾ ] | |
| First Name | Aamra ⓡ | |
| Middle Name | | |
| Last Name | Ahmad ⓡ | |
| Email Address | nspintake@aclu.org ⓡ | |
| Organization | American Civil Liber ies Union Fou | |
| Register Number | | |
| Phone Number | 202-457-0800 | |
| Fax Number | | |
| Other Information | | |

| | |
|---|---|
| Address Type | Work |
| Country | United States |
| Address Line 1 | 915 15 h Street NW |
| Address Line 2 | |
| City | Washington |
| State | District of Columbia |
| Zip/Postal Code | 20005 |

**Expedited Processing Information**

Expedited Processing Requested?          [ Yes ▾ ]

Expedited Processing Request Date          [        ] 📅 (mm/dd/yyyy)

Expedited Processing Determination          [ ▾ ]

Standards for Expedition          ☐ 1. Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.
☑ 2. An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information.
☐ 3. The loss of substan ial due process rights.
☐ 4. A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

Expedited Justification          See attached Request.

**Form Record Audit**

Save     Delete



**Aamra Ahmad**
Senior Staff Attorney
National Security Project
ACLU National Legal Department

June 26, 2024

Federal Bureau of Investigation
Director
Office of Information Policy (OIP)
United States Department of Justice
441 G Street, NW, 6th Floor
Washington, D.C. 20530
FOIA Public Liaison
Email: foipaquestions@fbi.gov

Re:     Freedom of Information Act Appeal/Privacy Act Request Nos. NFP-161243,
        NFP-161245, NFP-161247, and 1637191-000

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union
Foundation (together, the "ACLU") write to appeal the Federal Bureau of
Investigation's ("FBI") responses, numbered NFP-161243, NFP-161245, NFP-
161247, and 1637191-000, to the ACLU's Freedom of Information Act ("FOIA")
Request dated May 21, 2024 ("Request," attached as Exhibit A).

The FBI has made four separate responses to the Request, each dated June 5,
2024, and each applying to one or more of the four categories of records requested.
*See* Exhibit B (FBI Request No. NFP-161243, responding to one or more categories
of the Request), Exhibit C (FBI Request No. NFP-161245, responding to category 2
of the Request), Exhibit D (FBI Request No. NFP-161247, responding to category 3
of the Request), Exhibit E (FBI Request No. 1637191-000, responding to category 4
of the Request) (collectively, the "Responses").

The FBI is refusing to search for records responsive to the Request
(categories 1, 2, and 3 of the Request) and refusing to perform an adequate search
for records sought in the fourth category (category 4 of the Request). With respect to
categories 1, 2, and 3 of the Request, the FBI has refused to search for responsive
records, asserting that the Request is "overly broad," is "overly long, indefinite,
[contains] no date range or specific identifiers, and/or uses unexplained or
unidentified terms or acronyms," and "does not provide sufficient details to enable
FBI personnel to locate potentially responsive records with a 'reasonable amount of
effort.'" Ex. B at 1. Regarding category 2 of the Request, the FBI also asserts that

1



the Request does not "reasonably describe[]" the records sought because the Request would require the FBI to "answer inquiries, create records, conduct research, or draw conclusions concerning queried data." Ex. C at 1. In response to category 3 of the Request, the FBI further asserts that this category is "not searchable" in the FBI Central Records System ("CRS"), and, as it did with category 2, that the FBI is not required to "answer inquiries, create records, conduct research, or draw conclusions concerning queried data." *Id.* In response to category 4 of the Request, the FBI asserts that "[r]ecords responsive to [the] request are available for review" at the web address for the FBI's Freedom of Information Act/Privacy Act webpage (https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/freedom-of-information-privacy-act), and attaching a form addendum with "standard responses applicable to all [FOIPA] requests." Ex. E, at 1. The ACLU contacted the FBI to request clarification of its Response to category 4 of the Request, but the FBI's response provides no further clarification and merely repeats the original response. *See* Ex. F.

The Responses are inadequate and violate FOIA for the reasons stated below.

**1. The FBI does not explain why the Request is overly broad in scope, especially given the specific categories of records sought.**

    **(a) The FBI fails to justify its Response that the ACLU's Request is overbroad.**

The FOIA and relevant case law require agencies responding to FOIA requests to provide reasons for their determinations. *See* 5 U.S.C. § 552(a)(6)(A)(i)–(I) (responding agency "shall immediately notify the person making such request of such determination and the reasons therefor") (emphasis added); *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995) (agency must notify the requester of its decisions and provide reasons for those decisions). The regulation to which the FBI refers in its Responses, *see* Ex. B at 1; Ex. C at 1 (citing 28 C.F.R. § 16.3(b)), bears this out: "If after receiving a request a component determines that it does not reasonably describe the records sought, the component shall inform the requester what additional information is needed or why the request is otherwise insufficient." Nonetheless, the FBI's Response in Exhibit B that claims the Request is overly broad fails to explain why the Request is insufficient and what additional information is needed. *See* Ex. B at 1.

The Response fails to explain the FBI's determination that the Request is



"overly broad" and "does not provide sufficient details to enable FBI personnel to locate potentially responsive records with a 'reasonable amount of effort.'" Ex. B at 1. The FBI's only explanation as to how the Request could be considered ambiguous is to say that it is "overly long, indefinite, [contains] no date range or specific identifiers, and/or uses unexplained or unidentified terms or acronyms." *Id*. However, categories 1, 2, and 3 of the Request include a date range ("from January 20, 2017, to the present," Ex. A at 7–9 ). Category 1 of the Request further specifies the types of records sought (e.g., "final policies, guidance, procedures, directives, advisories, memoranda, agreements, training materials, and/or legal opinions," *id*. 7) and the subject of the records sought (e.g., records on the "use of JTTFs and/or fusion centers to collect information about … individuals and organizations engaged in protest" and the "criteria that trigger JTTF and/or fusion center involvement," *id*.). Category 2 of the Request also specifies the subject of the records sought (e.g., records "indicating [t]he number of individuals whose activities have been investigated through or by JTTFs and/or fusion centers in connection with protests," *id*. at 8). Category 3 of the Request specifies that the records sought concern the "definition[s]" of terms used by the FBI, *id*., and lists those terms (such as "Abortion-Related Violent Extremism" and "[d]omestic terrorism," *id*.). The single acronym used in the Request is explained (e.g., the Request defines "JTTFs" as Joint Terrorism Task Forces, *id*., at 2), and for each term listed in category 3, the Request cites an example of the FBI using the term (*id*. 8–9, n. 27-39). Category 4 of the Request is also drafted with specificity as to the content of the records sought (e.g., records "describing the process and/or procedures" for individuals seeking to challenge information "about themselves" that has been "collected and maintained by JTTFs and fusion centers," *id*. at 9).

In short and tellingly, the Response makes no attempt to address the individual categories of records sought in the Request or explain why the identified subjects and terms are lacking in specificity—it simply labels all of them overly broad.

Boilerplate language in the Response regarding the FBI's preference for more specific information about the records sought does not render the Response adequate. The FBI's Response provides "[e]xamples of specific information which could assist in locating potentially responsive records within a reasonable amount of effort," including identifying information such as an individual's name and birth date or an organization or event's date or location." Ex. B at 1. But the Request seeks information about records indicating whether and, if so, why and how, JTTFs and fusion centers have targeted individuals or organizations, which is information

3



only agencies possess. Thus, category 1 of the Request mentions individuals and organizations in reference to "the use of JTTFs and/or fusion centers to collect information about . . . individuals or organizations engaged in protest," *id.* at 7; category 2 of the Request asks for the "number of individuals" investigated by JTTFs and fusion centers to learn the extent to which individuals are targeted, *id.* at 8; and category 3 of the Request asks for records "concerning the definition of []" terms" used by JTTFs and fusion centers, *id.* The boilerplate information referenced in the FBI's Response is not in fact responsive.

Absent any further detail regarding which specific portions of paragraph 1, 2, and 3 of the Request purportedly do not reasonably describe the records sought, or what additional information is needed, the ACLU cannot clarify the Request or cure any alleged defects. For this reason, the Response is inadequate and the FBI must conduct an adequate search and process responsive records.

**(b) The Request reasonably describes the records sought.**

Each category of the ACLU's Request reasonably describes the records sought and for this separate reason also, the Response in Exhibit B is both inadequate and erroneous.

To fulfill FOIA's "strong presumption in favor of disclosure," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991), agencies must "'make . . . records promptly available to any person,' who submits a request that '(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules.'" *Republican Nat'l Comm. v. Dep't of State*, 235 F. Supp. 3d 235, 239 (D.D.C. 2016) (alteration in original) (quoting 5 U.S.C. § 552(a)(3)(A)); *see also* 28 C.F.R. § 16.3(b). Records are reasonably described if the description "enable[s] a professional employee of the agency who [i]s familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990) (internal quotations omitted); *accord, e.g.*, *Marks v. U.S. Dep't. of Justice*, 578 F.2d 261, 263 (9th Cir. 1978). "When the request demands all agency records on a given subject then the agency is obliged to pursue any 'clear and certain' lead it cannot in good faith ignore." *Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999) (quoting *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996)). Moreover, "[i]n evaluating the description of the records sought and defining the scope of the concomitant search, an agency 'ha[s] a duty to construe a FOIA request liberally.'" *Republican Nat'l Comm.*, 235 F. Supp. 3d at 239 (alteration in original) (quoting *People for the Ethical Treatment of Animals v. Nat'l*

4



*Inst. Of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014)). Thus, "the government must use 'some semblance of common sense' in interpreting FOIA requests, and any ambiguous FOIA requests must be interpreted 'liberally.'" *Pinson v. U.S. Dep't of Justice*, 70 F. Supp. 3d 111, 121 (D.D.C. 2014) (quoting *Dale v. IRS*, 238 F. Supp. 2d 99, 105 (D.D.C. 2002); *LaCedra v. Exec. Off. for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003)).

Each category of the Request easily meets this standard and describes the records it seeks with more than adequate precision. As described above, Category 1 of the Request specifies the types of records sought, to include "final policies, guidance, procedures, directives, advisories, memoranda, agreements, training materials, and/or legal opinions." *Id.* 7. It also describes the subject of the records sought, including records on the "use of JTTFs and/or fusion centers to collect information about … individuals and organizations engaged in protest" and the "criteria that trigger JTTF and/or fusion center involvement." *Id.* Category 2 of the Request also details the subject of the records sought, namely records "indicating [t]he number of individuals" and "the number and names of groups" whose "activities have been investigated through or by JTTFs and/or fusion centers in connection with protests." *Id.* at 8. Category 3 of the Request sets out that the records sought provide the "definition[s]" of terms used by the FBI, such as "Anarchist Violent Extremism" and "[r]adical agitators." *Id.* Category 3 of the Request also provides the FBI with cites to specific documents and statements in which the FBI has used each of the listed terms. *Id.* 8–9, n. 27–39. Category 4 of the Request is equally specific as the others. It lays out that the records sought describe the "process and/or procedures" for individuals to find out what "information about themselves has been collected and maintained by JTTFs and fusion centers," and the "process" for "challeng[ing] or expunge[ing]" inaccurate information. *Id.* at 9. Three of the categories also include a date limitation to help narrow the search for responsive records. *See* Request, Ex. A at 7–9 (requesting records "created from January 20, 2017 to present").

Given the specificity of each category in the Request, FBI employees who are familiar with the FBI's use of JTTFs and fusion centers to investigate, collect, and disseminate information on people engaged in protest and communities of color, and the privacy, civil rights, and civil liberties policies that apply to those entities, must pursue any clear leads in identifying potentially responsive records and use "some semblance of common sense" in interpreting the Request liberally. *See Truitt*, 897 F.2d at 545 n.36; *Halpern*, 181 F.3d at 288; *Pinson*, 70 F. Supp. 3d at 121. Notably, neither the Department of Homeland Security ("DHS") Privacy Office nor DHS

915 15th Street NW, Washington, D.C. 20005 | (202) 457-0800 | aahmad@aclu.org



Headquarters Office of Intelligence and Analysis ("I&A") has determined that the Request does not reasonably describe the records sought. *See, e.g.*, DHS Privacy Office Response Letter (attached as Exhibit G); DHS I&A Response Letter (attached as Exhibit H).

The Request's language, moreover, contrasts starkly with cases in which courts have found that FOIA requests failed to reasonably describe the requested records. For example, in *Yagman v. Pompeo*, 868 F.3d 1075 (9th Cir. 2017), the court concluded that a request for "[r]ecords/information" on "the names and company/organization affiliations of any CIA employees, agents, operatives, contractors, mercenaries, and/or companies who are alleged to have engaged in torture of persons" did not reasonably describe the records sought, because "Defendants would need to engage in quite a bit of guesswork to execute Yagman's request." *Id*. at 1078, 1081. *See also Freedom Watch, Inc. v. C.I.A.*, 895 F. Supp. 2d 221, 228–29 (D.D.C. 2012) (finding a request to be "vague" where it sought "any and all information 'leaked' or otherwise provided about a draft version of" a document because the requester did not define the term "leaks" and processing would require "federal employees to make complicated determinations about whether crimes have been committed") (internal citation omitted)). Unlike these cases, the Request seeks specific types of records related to a specific subject matter—JTTFs and fusion centers' investigation, collection, and dissemination of information on protesters and communities of color, and the privacy and civil rights and liberties policies that apply to them.

**2. The FBI has provided no explanation as to why category 2 of the Request requires it to respond to inquiries, create records, conduct research, or draw conclusions, and the Request only asks the FBI to search for responsive records.**

The Response to category 2 of the Request is both inadequate and erroneous. *See* Ex. C.

The Response to category 2 of the Request fails to explain the determination that the Request does not "reasonably describe[]" the records sought because it requires the FBI to "answer inquiries, create records, conduct research, or draw conclusions concerning queried data." Ex. C at 1. As explained above, *see supra* at 2, the FBI must explain "what additional information is needed or why the request is otherwise insufficient." 28 C.F.R. § 16.3(b); *see* 5 U.S.C. § 552(a)(6)(A)(i)–(I). Here,

6



the FBI made no attempt to explain how the Request could be considered an inquiry or require the FBI to create, rather than find, records, conduct research, or produce conclusions, nor did the FBI inform the ACLU what additional information might be needed to process the Request.

Moreover, the Response's boilerplate language regarding the FBI's preference for more identifying information for individuals, organizations, and events, *see* Ex. B at 1, does not render the Response adequate. Category 2(a) of the Request seeks records "indicating the *number* of individuals" investigated by JTTFs and fusion centers in connection with protests, Ex. A at 8 (emphasis added). The FBI can and must conduct a search for and process existing records that contain this information. It can and should in addition conduct a search for and process records of investigations or other records (with legitimate and appropriate withholdings invoked and explained) sufficient to allow the ACLU and the public to ascertain the number of individuals investigated by JTTFs and Fusion Centers as the Request seeks.

Similarly, Category 2(b) of the Request also seeks the "*number and names of groups*" investigated by JTTFs and fusion centers in connection with protests, *id*. at 8 (emphasis added). Again, the FBI can and must conduct a search for and process existing records that contain this information. It can and must in addition conduct a search for and process records of investigations or other records sufficient to allow the ACLU and the public to ascertain the number and names of groups investigated by JTTFs and Fusion Centers as the Request seeks.

The FBI's Response in Exhibit B is inadequate because it has failed to justify it with the required explanation and it is also in any event erroneous.

**3. The FBI does not explain why it cannot search its databases for records responsive to category 3 of the Request, or why the Request requires it to respond to inquiries, create records, conduct research, or draw conclusions.**

The FBI's Response to category 3 of the Request is also both inadequate and erroneous. *See* Ex. D.

First, the Response to category 3 of the Request fails to explain the determination that the "referenced subject" is "not searchable" in CRS and that a search for responsive records would require the FBI to "answer inquiries, create

7



records, conduct research, or draw conclusions concerning queried data." Ex. D. As explained above, *see supra* at 2, the FBI is required to explain "what additional information is needed or why the request is otherwise insufficient." 28 C.F.R. § 16.3(b); *see* 5 U.S.C. § 552(a)(6)(A)(i)–(I). Here, the FBI made no attempt to explain why the Request cannot be searched in CRS or why a search would require the FBI to answer inquiries, create, rather than find, records, conduct research, or produce conclusions. The FBI has also failed to inform the ACLU what additional information might be needed to process the Request. Because the FBI has failed to explain why a search for responsive records would require it to answer questions and create new records, the ACLU cannot clarify the Request or address any alleged defects.

Second and separately, the FBI is incorrect in asserting that a search for responsive records would require the FBI to "answer inquires, create records, conduct research, or draw conclusions." *See* Ex. D. This category of the Request, as with all other categories of the Request, does not ask the FBI to create records, do research, or make conclusions. *See* Ex. A at 8–9. Instead, the Request seeks records that "defin[e]" enumerated terms that are used to describe people and groups engaged in protest activity. *Id.* The Request seeks records that have already been created and that define, use, and apply definitions of the specific terms, *see*, *e.g.*, Ex. A at 8–9, n. 27–39, and an FBI search for and processing of responsive records does not require the creation of new records or formulation of answers to questions.

The Response is also incorrect in asserting that the records referenced in category 3 of the Request cannot be searched in the CRS. There can be no serious question that the CRS contains records responsive to this category of the Request, given the FBI's extensive, publicly acknowledged use of the enumerated terms. In fact, the Request cites examples of the FBI using each of the 13 terms listed in the Request. As noted in the Request, as recently as 2023, the FBI and DHS published a report entitled "Strategic Intelligence Assessment and Data on Domestic Terrorism," which discusses the first seven terms listed in category 3 of the Request. Ex. A at 8, n. 27–33. The FBI used another one of the terms, "Anarchist Violent Extremists," to refer to protesters opposed to the construction of Cop City in Atlanta. *Id.* at 8, n. 34. The remaining five terms included in the Request were used by then-Attorney General William Barr in public statements. *Id.* at 8–9, n. 35–39. The FBI has a statutory obligation to identify these records "manually or by automated means." 5 U.S.C. § 552(a)(3)(D). This is true regardless of how the CRS is indexed. *See Rosenfeld v. U.S. Dep't of Just.*, No. C 07-3240 MHP, 2010 WL 3448517, at *4 (N.D. Cal. Sept. 1, 2010) ("The FBI agent's decision to index or not to

915 15th Street NW, Washington, D.C. 20005 | (202) 457-0800 | aahmad@aclu.org

index . . . does not inform the FOIA analysis."); *Colgan v. Dep't of Just.*, No. 14-CV-740 (TSC), 2020 WL 2043828, at *5 (D.D.C. Apr. 28, 2020) ("[A]n agency's FOIA duties are not limited to the 'traditional' or 'routine' procedures it uses to respond to FOIA requests. The FBI must conduct a search reasonably calculated to discover and release responsive records.").

In addition to searching the CRS, the FBI must also search for responsive records in its other databases or repositories that are reasonably likely to contain responsive records, including but not limited to the Electronic Surveillance ("ELSUR") records system and the Electronic Case File ("ECF") records system. Where technologically possible, the FBI must electronically search the text of the documents in the relevant records systems, rather than simply searching for agency-assigned index terms, "keywords," or other metadata.[1] The FBI "cannot limit its search to only one record system if there are others that are likely to turn up the information requested.*" Int'l Couns. Bureau v. United States Dep't of Def.*, 101 F. Supp. 3d 48, 50–51 (D.D.C. 2015) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Therefore, the FBI must not restrict its search to CRS.

Additionally, manual searches with qualified personnel should also be conducted. Category 3 of the Request seeks records concerning the definitions of terms that may not be captured by electronic searches. For example, we understand that keyword searches of the CRS do not always search for specified terms in the text of CRS documents, but for tags or other metadata that the agency has chosen to associate with documents in the CRS. The Response suggests that, because of the way the CRS is indexed, such keyword searches will not, on their own, be an adequate method of identifying responsive records. Ex. D. Accordingly, in order to comply with FOIA, the FBI must confer with personnel whose work relates to the matters described in the Request in order to manually identify responsive records. *See* 5 U.S.C. § 552(a)(3)(D).

For these reasons, it is not plausible that the FBI cannot conduct searches in CRS, other databases, and manually for records sought in category 3 of the Request.

## 4. The FBI is required to conduct an adequate search and process records

---

[1] *See FOIA Trial Offers Rare Look into How FBI Searches Records, Responds to Requests*, Reporters Committee for Freedom of the Press (June 18, 2015), https://www.rcfp.org/foia-trial-offers-rare-look-how-fbi-searches-records-responds-reques/.



**responsive to Category 4 of the Request.**

The FBI's response to paragraph 4 of the Request merely directs the ACLU to the FBI's Freedom of Information Act/Privacy Act webpage and the FBI FOIPA Addendum form, *see* Ex. E, and this generic response is inadequate to meet its obligations under the FOIA.

"An inadequate search for records constitutes an improper withholding under the FOIA." *Dean v. U.S. Dep't of Justice*, 141 F. Supp. 3d 46, 48 (D.D.C. 2015). "An agency's search is adequate if its methods are reasonably calculated to locate records responsive to a FOIA request." *Hodge v. FBI*, 764 F. Supp. 2d 134, 141 (D.D.C. 2011); *see also* 28 C.F.R. § 16.3(b) (explaining that FOIA requires agencies to "locate [records requested] with a reasonable amount of effort."). By providing a generic response that fails to identify responsive documents, the FBI has violated 5 U.S.C. § 552(a)(6)(A). To the extent that this failure is attributable to the adequacy of the FBI's search for responsive records, the FBI violated 5 U.S.C. § 552(a)(3)(C) and (D), which requires the agency to make "reasonable efforts" to "review agency records for the purpose of locating" records "responsive to the request." Here, FBI has failed to fulfil its obligations under the FOIA.

First, the FBI has failed to explain why it has not searched for records responsive to category 4 of the Request. The FBI asserts that it had "relevant information specific to [the] request," and "responsive" records are available on its public FOIA website, but it does not specify what agency components or records repositories and databases were searched, nor the search terms or methods used to seek responsive records. Because an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested," *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), the agency "at a minimum ha[s] to aver that it has searched all files likely to contain relevant documents." *AIC v. DHS*, 950 F. Supp. 2d 221, 230 (D.D.C. 2013). Here, the FBI has not made any such assertion, and its response to the ACLU's request for clarification merely repeats the original response. *See* Ex. F.

Second, it is not plausible that a search by the FBI would fail to produce responsive records other than those provided in the letter responding to paragraph 4 of the Request—the FBI's Freedom of Information Act/Privacy Act webpage and its FOIA Addendum. *See* Ex. E. Given that the FBI has used JTTFs to target racial justice protesters and conduct widespread interviews in Muslim communities, *see* Ex. A at 4–5, it is not credible that the FBI does not have the records sought in

10



category 4 of the Request, which should describe the process and procedures in place for individuals to find out whether and what information about themselves has been collected and maintained by JTTFs and fusion centers, and the process by which any inaccurate information may be challenged and expunged, Ex. A at 9.

Boilerplate language in the Response listing the FBI's "standard responses" and exemptions do not render the Response adequate. Category 4 of the Request seeks records describing the "process and/or procedures" for individuals to "find out whether and what information about themselves has been collected and maintained by JTTFs and fusion centers" and "the process by which any inaccurate information may be challenged or expunged." Ex. A at 9. To the extent the FBI asserts that any such records are exempt, it can and should in addition conduct a search for and process records of investigations or other records (with legitimate and appropriate withholdings invoked and explained).

The FBI's decision to not search for records responsive to category 4 of the Request was in error, and it should promptly process responsive records.

For all these reasons, the FBI should process the Request, do so on an expedited basis, conduct an adequate search for responsive documents, and produce documents consistent with its obligations under the FOIA and FBI regulations.

Sincerely,

/s/ Aamra Ahmad
Aamra Ahmad
Senior Staff Attorney
National Security Project
American Civil Liberties
Union Foundation
915 15th Street NW
Washington, D.C. 20005
Tel: (202) 457-0800
aahmad@aclu.org

11

Exhibit A



**Aamra Ahmad**
Senior Staff Attorney
National Security Project
ACLU National Legal Department

May 21, 2024

Federal Bureau of Investigation
Attn: FOIA/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

Arnetta Mallory
FOIA Initiatives Coordinator
National Security Division
Department of Justice
Room 6150
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Privacy Office, Mail Stop 0655
Department of Homeland Security
2707 Martin Luther King Jr. Ave. SE
Washington, D.C. 20528-065

Re:    **Request Under Freedom of Information Act Concerning Joint
       Terrorism Task Forces and Fusion Centers (Expedited Processing
       and Fee Waiver Requested)**

To Whom It May Concern:

  This letter constitutes a request ("Request") pursuant to the Freedom of
Information Act ("FOIA"), 5 U.S.C. § 552 et seq., and its implementing regulations.[1]
The Request is submitted by the American Civil Liberties Union and the American
Civil Liberties Union Foundation (together, the "ACLU").[2] The Request seeks

---

[1] *See* 28 C.F.R. § 16 et seq. (Federal Bureau of Investigation, National Security Division); 6 C.F.R. §
5.1 et seq. (Department of Homeland Security).

[2] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that
provides legal representation free of charge to individuals and organizations in civil liberties cases
and educates the public about civil rights and civil liberties issues across the country. The American

1



information from the Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), and the Department of Homeland Security ("DHS") pertaining to the use of Joint Terrorism Task Forces ("JTTFs") and fusion centers to investigate, collect, and disseminate information on people engaged in protest and communities of color, and the adequacy of the privacy, civil rights, and civil liberties safeguards that apply to them.

JTTFs are FBI-operated task forces that establish formal partnerships between the FBI, state and local law enforcement agencies, and other federal law enforcement and intelligence agencies to conduct terrorism investigations. There are about 200 JTTFs throughout the country, including "at least one in each of the FBI's 56 field offices."[3] Fusion centers are a network of 80 state-run entities developed and supported by DHS as intelligence hubs to collect and disseminate counterterrorism and other alleged criminal information.[4] They receive funding, training, personnel, and other support from DHS.[5]

The public has little information about how either of these initiatives work and what privacy, civil rights, and civil liberties safeguards apply to them. This lack of information is also concerning because of credible media reports that JTTFs and fusion centers have been used to wrongly target protestors, communities of color, and those engaged in dissent.[6]

---

Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[3] FBI, *Joint Terrorism Task Forces*, https://perma.cc/6G6B-CGEG (last visited May 15, 2024).

[4] *See* Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110–53, § 511, 121 Stat. 317, 318–24 (2007), https://perma.cc/VM7U-B6A8; Staff of S. Perm. Subcomm. on Investigations, 112th Cong., Federal Support for and Involvement in State and Local Fusion Centers 12 (2012) ("Senate Fusion Centers Report"), https://perma.cc/K6VB-7RDH.

[5] *See, e.g.*, DHS, *National Network of Fusion Centers Assessment* (2021), https://perma.cc/VX55-Q6A2; John Rollins, Cong. Research Serv., RL34070, Fusion Centers: Issues and Options for Congress 41–42, 47 (updated Jan. 18, 2008), https://perma.cc/JRJ8-NXWB; Senate Fusion Centers Report at 20.

[6] *See, e.g.*, Mara Hvistendahl, *Austin Fusion Center Spied on Nonpolitical Cultural Events*, Intercept (Nov. 30, 2020), https://theintercept.com/2020/11/30/austin-fusion-center-surveillance-black-lives-matter-cultural-events/; Alex Kane, *The FBI is Using Unvetted, Right-Wing Blacklists to Question Activists About Their Support for Palestine*, Intercept (June 24, 2018), https://theintercept.com/2018/06/24/students-for-justice-in-palestine-fbi-sjp/; Jana Winter & Sharon Weinberger, *The FBI's New U.S. Terrorist Threat: 'Black Identity Extremists'*, Foreign Pol'y (Oct. 6,

2



This Request seeks information to educate the public about (1) the extent to which JTTFs and fusion centers (a) monitor and collect information on people engaged in protest activity and/or (b) associate protest with "terrorism," and (2) whether their privacy, civil rights, and civil liberties policies are adequate to guard against abuses and discrimination.

## I.    Background

JTTFs and fusion centers have a long track record of surveilling and disseminating information on First Amendment-protected activity without a nexus to criminal conduct. Both the FBI and DHS should have appropriate policies to protect the public's privacy, civil rights, and civil liberties when JTTFs and fusion centers conduct their activities.

JTTFs have a history of targeting social justice protesters without establishing a connection to wrongdoing. For example, in 2014, JTTFs targeted racial justice protesters in Minnesota and New York for surveillance after the police killings of Michael Brown and Eric Garner.[7] During widespread protests for racial justice in 2020, precipitated by the police killings of George Floyd and other Black people, DOJ directed JTTFs to shift their focus to identifying "instigators" associated with the protests.[8] In one such investigation, a Colorado Springs JTTF participant posed undercover as a racial justice protester for over a year to spy on local protesters and attempt to entice them to commit firearm offenses.[9]

Fusion centers around the country have collected and disseminated information on protest activity and protesters, even absent any allegation of

---

2017), https://perma.cc/Q2E9-6ZGF; Sam Levin, *Revealed: FBI Terrorism Taskforce Investigating Standing Rock Activists*, Guardian (Feb. 10, 2017), https://perma.cc/Y8FC-J287; Lee Fang, *Why Was an FBI Joint Terrorism Task Force Tracking a Black Lives Matter Protest?*, Intercept (Mar. 12, 2015), https://theintercept.com/2015/03/12/fbi-appeared-use-informant-track-black-lives-matter-protest/.

[7] Fang, *supra* note 6; Alex Kane, *How the NYPD's Counterterrorism Apparatus Is Being Turned on Protestors*, Vice (Jan. 19, 2015), https://perma.cc/4MYG-745C.

[8] Att'y Gen. William Barr, *Statement to Federal and Local Law Enforcement Roundtable* (Jul. 9, 2020), YouTube, https://perma.cc/RVH3-3Q4B; Greg Walters, *Trump's Feds Are Reviewing 'All' the Footage of 2020 Unrest for Possible Crimes*, Vice (Sept. 2, 2020), https://perma.cc/RR2R-RKU7; Press Release, Off. of Pub. Aff., DOJ, Attorney General William P. Barr's Statement on Riots and Domestic Terrorism (May 31, 2020), https://perma.cc/9WR4-6YVV.

[9] Trevor Aaronson, *The Honey Trap: The FBI Used an Undercover Cop with Pink Hair to Spy on Activists and Manufacture Crimes*, Intercept (May 30, 2020), https://theintercept.com/2023/03/21/fbi-colorado-springs-surveillance/.

3



wrongdoing. For example, in 2019, a fusion center in Iowa partnered with the FBI to run a drill to prepare for a purported wind farm attack by environmental activists, but both the fusion center and the FBI later issued reports admitting there was no evidence to substantiate that environmental advocates intended to commit such an attack.[10] In another instance, in 2023, a fusion center in Missouri issued a bulletin to law enforcement partners that sought to connect environmentalists with violence by claiming that a new movie based on a fictional plot to bomb a pipeline could "inspire" environmentalists to engage in violence against critical infrastructure—even as the bulletin conceded that there was "no information on specific threats" to infrastructure.[11] Similarly, in Colorado in 2023, a fusion center issued a bulletin warning of a student walkout to protest gun violence without any evidence that the walkout raised any legitimate safety concern meriting law enforcement scrutiny.[12] And in Virginia, a fusion center sensationalized the activity of environmental activists opposed to the construction of a pipeline by issuing an intelligence assessment equating the activists' tactics, which included ignoring law enforcement's commands and threatening to boycott a local business patronized by pipeline workers, with bombings and other acts of physical violence committed by designated foreign terrorist organizations against the U.S. military.[13]

JTTFs and fusion centers also have a history of wrongfully targeting and infiltrating communities of color. For example, after 9/11, the FBI used JTTFs to conduct widespread "voluntary" interviews in Muslim communities during which

---

[10] Alleen Brown, *Tilting at Windmills: The FBI Chased Imagined Eco-Activist Enemies, Documents Reveal*, Intercept (Aug. 24, 2020), https://theintercept.com/2020/08/24/fbi-fusion-center-environmental-wind/.

[11] Ken Klippenstein, *"How to Blow Up a Pipeline" Movie Poses Terror Threat, Kansas City Intel Agency Claims*, Intercept (Apr. 11, 2023), https://theintercept.com/2023/04/11/how-to-blow-up-a-pipeline-movie/.

[12] Ken Klippenstein, *Tasked with Stopping Terror, Colorado's Intel Agency Monitors Students Protesting Gun Violence*, Intercept (Apr. 5, 2023), https://theintercept.com/2023/04/05/colorado-student-gun-violence-protest/.

[13] Brown, *supra* note 10; Virginia Fusion Center, *VFC Intelligence Assessment 19-04: Criminal Environmental Groups Study and Adopt Militant Insurgent Strategies to Advance Goals in Virginia* (Sept. 3, 2019), https://www.documentcloud.org/documents/7040982-Virginia-Fusion-Center-Criminal-Environmental.html [https://bit.ly/44Rn7CY].



agents asked people about their political beliefs.[14] In Chicago, a fusion center disseminated numerous Suspicious Activity Reports describing males who "appeared Middle Eastern" or "Arabic" and were engaged in the First Amendment-protected activity of taking photographs or saying the word "jihad," which in Islam can refer to spiritual or personal struggle.[15] More recently, some states have asserted an increased reliance on information-sharing through fusion centers and resource allocation to JTTFs to monitor local communities and protesters in response to the Israel-Gaza conflict.[16]

Despite the ongoing risks posed to privacy, civil rights, and civil liberties, JTTFs and fusion centers remain secretive and subject to scant oversight and accountability. JTTFs, for example, have been in operation since at least 1980,[17] but their impact on privacy and civil rights and liberties has not been meaningfully evaluated by Inspector Generals, Congress, or other federal entities.[18] The absence of meaningful public and congressional oversight is especially troubling since FBI task forces, including JTTFs, are structured to deputize state and local law enforcement participants as federal agents, and can thereby shield them from local

---

[14] *E.g.*, Jodi Wilogren, *A Nation Challenged: The Interviews; Michigan 'Invites' Men from Mideast to Be Interviewed*, N.Y. Times (Nov. 27, 2001), https://www.nytimes.com/2001/11/27/us/nation-challenged-interviews-michigan-invites-men-mideast-be-interviewed.html; Mary Beth Sheridan, *Interviews of Muslims to Broaden*, Wash. Post (Jul. 16, 2004), https://perma.cc/4HYV-M28E.

[15] Open the Gov't, *The Cost of Fear: Long-Cited Abuses Persist at U.S. Government-Funded Post-9/11 Fusion Centers* (Apr. 10, 2020), https://www.openthegovernment.org/dhs-fusion-centers-full-report/ [https://bit.ly/3QWmpOZ].

[16] Press Release, Kathy Hochul, Governor, N.Y. State, Following Increase in Hate and Bias Incidents, Governor Hochul Deploys Additional Staff to Joint Terrorism Task Force (Nov. 13, 2023), https://perma.cc/7N58-VJM3; *Massachusetts Authorities Prepared for Any Possible Israel, Hamas War Protests*, WCVB/ABC News (Oct. 13, 2023), https://perma.cc/6HUC-GMLK; Press Release, Greg Abbott, Governor, State of Tex., Governor Abbott Vows Unwavering Support for Israel Amid Act of War (Oct. 9, 2023), https://perma.cc/34JF-YZRG.

[17] Off. of Inspector Gen., DHS, *Coordination Between FBI and ICE on Investigations of Terrorist Financing*, at 3 (July 2007), https://perma.cc/5JD3-WLMM.

[18] Publicly available reports and investigations related to the work of JTTFs have so far not set out to consider the privacy, civil rights, and civil liberties impacts. *See generally* Off. of Inspector Gen., DHS, *HSI Effectively Contributes to the FBI's Joint Terrorism Task Force, but Partnering Agreements Could be Improved* (Aug. 13, 2020), https://perma.cc/K2TT-67GM; Off's. of Inspector Gen., Intelligence Community, DHS & DOJ, *Review of Domestic Sharing of Counterterrorism Information* (Mar. 2017), https://perma.cc/FJ8G-M7R3; Off. of Inspector Gen., DOJ, *The FBI's Compliance with the Attorney General's Investigative Guidelines* (Sept. 2005), https://perma.cc/E3CC-BMRW.



and state laws protecting civil rights and civil liberties.[19] Indeed, police forces in a few of the nation's largest cities have chosen to leave FBI task forces because of disputes with federal officials over transparency and accountability for abuses.[20]

Fusion centers similarly operate absent sufficient transparency and oversight. The only meaningful effort to conduct oversight of fusion centers was conducted by the U.S. Senate Permanent Subcommittee on Investigations over a decade ago. That 2012 investigation revealed that DHS's Office of Civil Rights and Civil Liberties had already made findings that DHS intelligence officials working at fusion centers had "overstepped legal boundaries" by "[r]eporting on First Amendment-protected activities lacking a nexus to violence or criminality; improperly characterizing political, religious or ideological speech that is not explicitly violent or criminal; and attributing to an entire group the violent or criminal acts of one or a limited number of the group's members."[21] The Subcommittee's independent two-year investigation similarly concluded that fusion centers' reports were "oftentimes shoddy," "sometimes endangering citizens' civil liberties and Privacy Act protections," and "more often than not unrelated to terrorism."[22]

In 2023, DOJ updated its nondiscrimination guidance,[23] and DHS adopted that same guidance pending a new department policy.[24] The DOJ nondiscrimination guidance applies to federal personnel, joint operations, and all federal task force participants, including state and local officers,[25] which would include JTTFs. It is

---

[19] *See* Simone Weichselbaum, *Why Some Police Departments Are Leaving Federal Task Forces*, Marshall Project (Oct. 31, 2019), https://perma.cc/C8FQ-UJJ8.

[20] *Id*. (describing "clashes" between local law enforcement agencies and federal authorities after state and local officers working on federal task forces were shielded from accountability and transparency for shootings in Atlanta, Austin, and Albuquerque, including two that resulted in death).

[21] Senate Fusion Centers Report at 36.

[22] *Id*. at 1.

[23] *See* DOJ, *Guidance for Law Enforcement Agencies Regarding the Use of Race, Ethnicity, Gender, National Origin, Religion, Sexual Orientation, Gender Identity, and Disability* (May 2023) ("DOJ Nondiscrimination Guidance"), https://perma.cc/7AYH-P3F9.

[24] Mem. from DHS Sec'y Alejandro Mayorkas to DHS Agency and Off. Leaders, *Reaffirming the Commitment to Nondiscrimination in Department of Homeland Security Activities* (May 25, 2023), https://perma.cc/WV4G-95H6.

[25] DOJ Nondiscrimination Guidance at 2, 14.

125 Broad Street, Floor 18, New York, NY 10004



unclear if and how this guidance applies to DHS-funded and supported fusion centers.

Although an improvement over previous guidance, the 2023 DOJ nondiscrimination guidance contains loopholes that permit national and homeland security and law enforcement agencies to rely on protected characteristics in their investigative and intelligence gathering activity.[26] The public needs to know if and how the 2023 guidance has been applied to and by JTTFs and fusion centers, and whether it is effective at protecting safeguarding rights and preventing discrimination.

It is critical that the public understand the nature of federal, state, and local collaboration in monitoring people engaged in dissent and its impact on privacy and civil rights and liberties.

## II.   Records Requested

1.   All final policies, guidance, procedures, directives, advisories, memoranda, agreements, training materials, and/or legal opinions created from January 20, 2017 to the present, pertaining to:
   a.   The use of JTTFs and/or fusion centers to collect information about, monitor, surveil, observe, question, interrogate, and/or investigate individuals or organizations engaged in protest;
   b.   The activities and/or predicate criteria that trigger JTTF and/or fusion center involvement, including the legal justification and/or factual showing required;
   c.   Intra-agency correspondence and correspondence among federal, state, and local law enforcement agencies pertaining to monitoring, surveilling, observing, questioning, interrogating, and/or otherwise investigating individuals or groups engaged in protest through or by JTTFs and/or fusion centers;
   d.   The collection, storage, use, and/or dissemination of data (including photographs, videos, and electronic surveillance records) obtained during and/or in connection with monitoring of individuals or groups engaged in protest through or by JTTFs and/or fusion centers; and

---

[26] *See, e.g.*, Letter from ACLU, Brennan Ctr. for Just., NAACP Legal Def. and Educ. Fund, and Leadership Conf. on Civ. & Hum. Rts. to Lisa O. Monaco, Deputy Att'y Gen., DOJ, *Concerns About DOJ's 2023 Racial Profiling Guidance*, 2 (Oct. 21, 2023), https://perma.cc/H63H-6S4C.



e. JTTFs and fusion centers' protection of privacy, civil rights, and civil liberties.

2. Records created from January 20, 2017 to the present, indicating:
   a. The number of individuals whose activities have been investigated through or by JTTFs and/or fusion centers in connection with protests; and
   b. The number and names of groups whose activities have been investigated through or by JTTFs and/or fusion centers in connection with protests; and

3. Records created from January 20, 2017, to the present concerning the definition of the following terms as used and applied by JTTFs and/or fusion centers:
   a. "Racially or Ethnically Motivated Violent Extremism";[27]
   b. "Anti-Government or Anti-Authority Violent Extremism";[28]
   c. "Animal Rights or Environmental Violent Extremism";[29]
   d. "All Other Domestic Terrorism Threats";[30]
   e. "Abortion-Related Violent Extremism";[31]
   f. "Domestic violent extremism";[32]
   g. "Domestic terrorism";[33]
   h. "Anarchist violent extremism";[34]
   i. "Radical agitators";[35]

---

[27] FBI & DHS, *Strategic Intelligence Assessment and Data on Domestic Terrorism*, 4–5 (June 2023), https://perma.cc/6M9P-3H55.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] Alleen Brown, *Federal Agencies Pushed Extreme View of Cop City Protesters, Records Show*, Guardian (Dec. 6, 2023), https://perma.cc/SB2R-6MDD; Adam Federman, *How the FBI Used Cop City Protests to Snoop on Activists in Chicago*, Grist (Mar. 23, 2023), https://perma.cc/8HAY-ZWHH.

[35] Press Release, Off. of Pub. Aff., DOJ, Attorney General William P. Barr's Statement on Riots and Domestic Terrorism (May 31, 2020), https://perma.cc/9WR4-6YVV.

8



j.   "Criminal organizers and instigators";[36]
k.   "Violent instigators";[37]
l.   "Antifa";[38] and
m.   "Far-left extremists."[39]

4.   Records describing the process and/or procedures individuals may use to find out whether and what information about themselves has been collected and maintained by JTTFs and fusion centers, and the process by which any inaccurate information may be challenged and expunged.

\* \* \*

Where a document contains information that falls into one or more of the categories described above, the ACLU seeks the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

With respect to the form of production, the ACLU requests that responsive electronic records be provided electronically in their native file format. See 5 U.S.C. § 552(a)(3)(B). Alternatively, the ACLU requests that the records be provided electronically in a text- searchable, static-image format (PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

## III.   Request for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[40] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgent[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C.§ 552(a)(6)(E)(v)(II).

---

[36] *Id.*

[37] Press Release, Off. of Pub. Aff., DOJ, Attorney General William P. Barr's Remarks on Mr. George Floyd and Civil Unrest (June 4, 2020), https://perma.cc/UA9Y-NWZ9.

[38] *Id.*

[39] Phil McCausland, *Attorney General Barr Blames 'Far-Left Extremist Groups' for Violent Protests* (May 30, 2020), https://perma.cc/W8K6-83CW.

[40] *See also* 28 C.F.R. § 16.5(e) (DOJ, FBI); 6 C.F.R. § 5.5(e) (DHS).

9



A. <u>The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.</u>

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II).[41] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[42]

The ACLU regularly publishes ACLU magazine, which reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 900,000 people. The ACLU also publishes regular updates and alerts via email to over 4.8 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 6.6 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[43] and ACLU

---

[41] *See also* 28 C.F.R. § 16.5(e)(1)(ii) (DOJ, FBI); 6 C.F.R. § 5.5(e)(1)(ii) (DHS).

[42] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." See, e.g., *Leadership Conference on Civil Rts. v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[43] *See, e.g.*, Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://perma.cc/TA87-2TQ8; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://perma.cc/V2H6-4GHH; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://perma.cc/LY5L-BYF6; Press Release, ACLU, Privacy International Demand Government Disclose Nature and Extent of Hacking Activities (Dec. 21, 2018), https://perma.cc/WJ4J-KRD8; Press Release, ACLU, New Documents Reveal Government Plans to Spy on Keystone XL Protesters (Sept. 4, 2018), https://perma.cc/TD8G-9QYV; Press Release, ACLU, ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody (May 22, 2018), https://perma.cc/K5TJ-8CLN; Press Release, ACLU, ACLU Demands CIA Records on Campaign Supporting Haspel Nomination (May 4, 2018), https://perma.cc/8LXC-G2LL; Press Release, ACLU, Advocates File FOIA Request For ICE

10



attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[44]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[45] The ACLU also regularly publishes

Documents on Detention of Pregnant Women (May 3, 2018), https://perma.cc/ZR44-CDND; Press Release, ACLU, Civil Rights Organizations Demand Police Reform Documents from Justice Department (Jan. 4, 2018), https://perma.cc/D7AY-ZVY5; Press Release, ACLU, ACLU Files Lawsuits Demanding Local Documents on Implementation of Muslim Ban (Apr. 12, 2017), https://perma.cc/2DDL-6T92; Press Release, ACLU, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://perma.cc/VA4D-SRF6; Press Release, ACLU, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://perma.cc/MGA4-H72E; Press Release, ACLU, ACLU Sues for Bureau of Prisons Documents on Approval of CIA Torture Site (Apr. 14 2016), https://perma.cc/Y3GA-9X69; Press Release, ACLU, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://perma.cc/Z96W-3V6S.

[44] *See, e.g.*, Charlie Savage, *N.S A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times (June 26, 2019), https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU deputy project director Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill (Mar. 21, 2019), https://perma.cc/ZZ69-BFCE (quoting former ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://perma.cc/XC6A-NR8T (quoting former ACLU attorney Hugh Handeyside); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, https://perma.cc/9EY3-Y827 (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, https://perma.cc/TK4G-MFMC (quoting former ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://perma.cc/76B8-4ZUT (quoting ACLU deputy project director Nate Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, https://perma.cc/P9Z6-HA4Z (quoting ACLU project director Hina Shamsi).

[45] *See, e.g.*, ACLU, *Bad Trip: Debunking the TSA's 'Behavior Detection' Program* (2017), https://perma.cc/7HK6-8BPD; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site*, ACLU (Nov. 22, 2016), https://perma.cc/B8YM-9YUD; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most*, ACLU (Aug. 8, 2016), https://perma.cc/6G59-L2AE; ACLU, *Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative* (2016), https://perma.cc/JCR6-578D; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida*, ACLU (Feb. 22, 2015), https://perma.cc/Z9F9-RAW3; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights*, ACLU (Oct. 30, 2015),

11



books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. See https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. See https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.[46]

The ACLU website includes many features on information obtained through the FOIA. The ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct

---

https://perma.cc/6579-K84Z; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333*, ACLU (Oct. 30, 2014), https://perma.cc/E6J5-XVMN.

[46] *See, e.g.*, *ACLU v. ODNI – FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act*, ACLU (Apr. 2, 2019), https://perma.cc/88CJ-CDHS; *ACLU v. DOJ – FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media*, ACLU (Mar. 26, 2019), https://perma.cc/Y6S4-R2LB; *ACLU v. DOJ – FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties*, ACLU (Apr. 23, 2019), https://perma.cc/ZXR8-XN2N; *Executive Order 12,333 – FOIA Lawsuit*, ACLU (Dec. 3, 2018), https://perma.cc/XA5U-3EA4; *ACLU v. United States*, ACLU (Nov. 1, 2021), https://perma.cc/AKJ4-VK8G (ACLU motions requesting public access to FISA court rulings on government surveillance); *ACLU v. DOJ – FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements*," ACLU (Apr. 6, 2016), https://perma.cc/8MM7-BM4L; *FOIA Request for Justice Department Policy Memos on GPS Location Tracking*, ACLU (Mar. 12, 2014), https://perma.cc/4YLP-DHE6; *Florida Stingray FOIA*, ACLU (Feb. 22, 2015), https://perma.cc/3C9Q-F9CG; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida*, ACLU (Feb. 22, 2015), https://perma.cc/3WDP-T43Z.

12



sophisticated searches of its contents relating to government policies on rendition, detention, and interrogation.[47] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.[48]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

B. <u>The records sought are urgently needed to inform the public about actual or alleged government activity.</u>

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the use of JTTFs and fusion centers to investigate protesters and communities of color raises significant privacy, civil rights, and civil liberties concerns. *See supra* Section I. Yet, there is little publicly-available information about how JTTFs and fusion centers gather, use, and disseminate information and data and the existence or effectiveness of any safeguards that are in place.

Specifically, the public does not know what activities JTTFs and fusion centers are engaging in; who they are targeting and how these targets are selected; what role state and local law enforcement entities are playing; and whether adequate safeguards are in place to ensure that protestors' liberties and rights are protected. Thus, timely access to information regarding JTTF and fusion center practices and policies to protect privacy, rights, and liberties is urgently needed to inform the public about this government activity, which has potentially far-reaching implications.

---

[47] *The Torture Database*, ACLU, https://perma.cc/KVQ8-PWN4 (last visited Dec. 7, 2022); *see also Countering Violent Extremism FOIA Database*, ACLU, https://perma.cc/2LJ8-Y6CR (last visited Dec. 7, 2022); *TSA Behavior Detection FOIA Database*, ACLU, https://perma.cc/G4YR-SM9Z (last visited Dec. 7, 2022); *Targeted Killing FOIA Database*, ACLU, https://perma.cc/C5C5-QD7U (last visited Dec. 7, 2022).

[48] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://perma.cc/885E-XY3K; *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU (Nov. 29, 2010), https://perma.cc/XP5V-8QRF; *Statistics on NSLs Produced by Department of Defense*, ACLU, https://perma.cc/G6BN-QQSR (last visited Dec. 7, 2022).

125 Broad Street, Floor 18, New York, NY 10004



## IV.    Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C.§ 552(a)(4)(A)(iii). [49] The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.    The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.

As discussed above, credible media and other investigative accounts underscore the substantial public interest in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of an issue of profound public importance. Because limited information about the JTTFs is publicly available, the records sought are certain to contribute significantly to the public's understanding of the scope of involvement of these counter-terrorism tools in policing domestic protests.

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. See *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.    The ACLU is a representative of the news media and the records are not sought for commercial use.

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because

---

[49] See also 28 C.F.R. § 16.10(k)(2) (FBI, NSD); 6 C.F.R. § 5.11(b) (DHS).

125 Broad Street, Floor 18, New York, NY 10004



it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[50]; see also *Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. See, e.g., *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[51]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[52] As

---

[50] *See also* 28 C.F.R. § 16.10(b) (FBI, NSD); 6 C.F.R. § 5.11(b)(6) (DHS).

[51] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information/public education activities. See, e.g., *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d; *Nat'l Sec. Archive*, 880 F.2d at 1387; see also *Leadership Conference on Civil Rts.*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[52] The ACLU regularly receives FOIA fee waivers from federal agencies. For example, in June 2018, the U.S. Citizenship and Immigration Services granted a fee-waiver request regarding a FOIA

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

was true in those instances, the ACLU meets the requirements for a fee waiver
here.

\* \* \*

Pursuant to applicable statute and regulations, we expect a determination
regarding expedited processing within ten (10) calendar days. See 5 U.S.C. §
552(a)(6)(E)(ii)(I); 28 C.F.R. § 16.5(e)(4) (FBI, NSD); 6 C.F.R. § 5.5(e)(4) (DHS).

If the request is denied in whole or in part, the ACLU asks that you justify all
withholdings by reference to specific exemptions to FOIA. The ACLU also asks that
you release all segregable portions of otherwise exempt material in accordance with
5 U.S.C. § 552(b). Furthermore, if any documents responsive to this request are
classified, please identify those documents, including a date and document number
where possible, so we may begin the process of requesting a Mandatory
Declassification Review under the terms of Executive Order 13,526. The ACLU
reserves the right to appeal a decision to withhold any information or deny a waiver
of fees.

Please send all correspondence and records relating to this request to Aamra
Ahmad at ▉▉▉▉▉▉▉▉▉

I certify that the foregoing information provided in support of the request for
expedited processing is true and correct to the best of my knowledge and belief.

---

request for documents relating to the use of social media surveillance. In August 2017, CBP granted
a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April
2017. In June 2017, the Department of Defense granted a fee-waiver request regarding a FOIA
request for records pertaining to the authorities approved by President Trump in March 2017 which
allowed U.S. involvement in Somalia. In June 2017, the Department of Defense, the CIA, and the
Office of Inspector General granted fee-wavier requests regarding a FOIA request for records
pertaining to U.S. involvement in the torture of detainees in prisons in Yemen, Eritrea, and aboard
Yemeni or Emirati naval vessels. In May 2017, CBP granted a fee-waiver request regarding a FOIA
request for documents related to electronic device searches at the border. In April 2017, the CIA and
the Department of State granted fee-waiver requests in relation to a FOIA request for records
related to the legal authority for the use of military force in Syria. In March 2017, the Department of
Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver
requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil,
Yemen. In June 2016, the Office of the Director of National Intelligence granted a fee-waiver request
regarding a FOIA request related to policies and communications with social media companies'
removal of "extremist" content. In May 2016, the FBI granted a fee-waiver request regarding a FOIA
request issued to the Department of Justice for documents related to Countering Violent Extremism
Programs.

16



Executed on the 21st day of May, 2024.

Sincerely,

Aamra Ahmad
Senior Staff Attorney
National Security Project
American Civil Liberties Union
Foundation
915 15th Street NW
Washington, D.C. 20005
Tel: (202) 457-0800

17

# Exhibit B



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

June 5, 2024

AAMRA AHMAD
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15TH STREET NORTHWEST
WASHINGTON, DC 20005

FOIPA Request No.: NFP-161243
Subject: Various Records Pertaining to the Use of JTTFs and Fusion Centers
(On or After January 20, 2017)

Dear Aamra Ahmad:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request. Below you will find informational paragraphs relevant to your request. Please read each item carefully.

The FOIPA requires agencies to provide access to reasonably described, nonexempt records [Title 5, United States Code, Section 552(a)(3)(A)]. The information requested in the referenced letter is not considered a FOIPA request because it does not comply with the FOIPA and its regulations. Therefore, your request is being administratively closed for one or more of the following reasons:

☐ The FOIPA does not require federal agencies to answer inquiries, create records, conduct research, or draw conclusions concerning queried data.

☐ Your request is too vague as it does not comply with the requirements of 28 CFR § 16.3(b). Your request lacks specificity; and therefore, the FBI cannot reasonably locate records with a "reasonable amount of effort."

☒ Your request is overly broad as it contains an overly long, indefinite, no date range or specific identifiers, and/or uses unexplained or unidentified terms and acronyms. Your request does not provide sufficient details to enable FBI personnel to locate potentially responsive records with a "reasonable amount of effort;" and therefore, we were unable to conduct a search of the Central Records System as your request does not comply with the requirements of 28 CFR § 16.3(b).

☐ Your request seeks information that does not fall under the purview of the FOIPA. The information requested in the referenced letter is not considered a FOIPA request because it does not comply with the requirements of 28 CFR § 16.3(b).

Examples of specific information which could assist in locating potentially responsive records within a reasonable amount of effort are as follows:

- Individuals
  - Complete name
  - Birth date
  - Place of birth
  - Place of death
  - Date of death
  - Date and location of incident

- Organizations or Events
  - Date of event
  - Time frame
  - Location

For questions on how to reasonably describe your request, please email us at foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request. Additional information about the FOIPA can be found at www.fbi.gov/foia.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified. You may also contact the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

Exhibit C



**U.S. Department of Justice**

_____

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

June 5, 2024

AAMRA AHMAD
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15TH STREET NORTHWEST
WASHINGTON, DC 20005

FOIPA Request No.: NFP-161245
Subject: Number of Individuals or Groups whose activities
have been investigated by JTTFs and Fusion Centers in
connection with protests
(On or After January 20, 2017)

Dear Aamra Ahmad:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request. Below you will find informational paragraphs relevant to your request. Please read each item carefully.

The FOIPA requires agencies to provide access to reasonably described, nonexempt records [Title 5, United States Code, Section 552(a)(3)(A)]. The information requested in the referenced letter is not considered a FOIPA request because it does not comply with the FOIPA and its regulations. Therefore, your request is being administratively closed for one or more of the following reasons:

☒ The FOIPA does not require federal agencies to answer inquiries, create records, conduct research, or draw conclusions concerning queried data.

☐ Your request is too vague as it does not comply with the requirements of 28 CFR § 16.3(b). Your request lacks specificity; and therefore, the FBI cannot reasonably locate records with a "reasonable amount of effort."

☐ Your request is overly broad as it contains an overly long, indefinite, no date range or specific identifiers, and/or uses unexplained or unidentified terms and acronyms. Your request does not provide sufficient details to enable FBI personnel to locate potentially responsive records with a "reasonable amount of effort;" and therefore, we were unable to conduct a search of the Central Records System as your request does not comply with the requirements of 28 CFR § 16.3(b).

☐ Your request seeks information that does not fall under the purview of the FOIPA. The information requested in the referenced letter is not considered a FOIPA request because it does not comply with the requirements of 28 CFR § 16.3(b).

Examples of specific information which could assist in locating potentially responsive records within a reasonable amount of effort are as follows:

- Individuals
  - Complete name
  - Birth date
  - Place of birth
  - Place of death
  - Date of death
  - Date and location of incident

- Organizations or Events
  - Date of event
  - Time frame
  - Location

For questions on how to reasonably describe your request, please email us at foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request. Additional information about the FOIPA can be found at www.fbi.gov/foia.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified. You may also contact the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

# Exhibit D



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

June 5, 2024

AAMRA AHMAD
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15TH STREET NORTHWEST
WASHINGTON, DC 20005

Request No.: NFP-161247
Subject: Definition of Terms Used and
Applied by JTTFs and Fusion Centers
(On or After January 20, 2017)

Dear Aamra Ahmad:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request.   Please see the paragraphs below for relevant information about your request.

Your request for the above referenced subject is not searchable in our indices.   The FBI Central Records System (CRS) is indexed according to investigatory interests, and it is not arranged in a manner that allows for the retrieval of information in the form you have requested. The FOIA does not require federal agencies to answer inquiries, create records, conduct research, or draw conclusions concerning queried data.   Rather the FOIA requires agencies to provide access to reasonably described, nonexempt records. Therefore, your request is being administratively closed.

For questions on how to reasonably describe your request, please email us at foipaquestions@fbi.gov.   Please reference the FOIPA Request number listed above in all correspondence concerning your request.   Additional information about the FOIPA can be found at www.fbi.gov/foia.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov.   The subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.   You may also contact the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

Exhibit E

**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

June 5, 2024

MS. AAMRA AHMAD
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15TH STREET NORTHWEST
WASHINGTON, DC 20005

FOIPA Request No.: 1637191-000
Subject: Process and Procedures Individuals May
Use to Find Information Collected and Maintained by
JTTFs and Fusion Centers

Dear Ms. Ahmad:

This is in response to your Freedom of Information Act (FOIA) request.   Please see the paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

Records responsive to your request are available for review on the following public website, www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/freedom-of-information-privacy-act.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.   **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

Additional information about the FOIPA can be found at www.fbi.gov/foia.   Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov.   Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov.   The subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.   You may also contact the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests.   Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.   Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)      **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].   FBI responses are limited to those records subject to the requirements of the FOIPA.   Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)      **Intelligence Records**.   To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)      **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)      **Requests for Records about any Individual—Witness Security Program Records.**   The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)      **Requests for Confidential Informant Records.** The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)      **Record Searches and Standard Search Policy.**   The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless specifically requested, a standard search does <u>not</u> include a search for reference entity records, administrative records of previous FOIPA requests, or civil litigation files.

       a.   *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation
       b.   *Reference Entity Records*- created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii)      **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)      **Foreseeable Harm Standard.**   As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)).   The FBI considers this foreseeable harm standard in the processing of its requests.

(iv)      **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.   Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

Exhibit F

| | |
|---|---|
| **From:** | FOIPAQUESTIONS@FBI.GOV |
| **To:** | |
| **Subject:** | RE: FOPIA Request No. 1637191-000 |
| **Date:** | Wednesday, June 26, 2024 2:25:31 PM |
| **Attachments:** | image003.png |

**This Message Is From an External Sender**
This message came from outside your organization.

Good afternoon,

Thank you for contacting foipaquestions@fbi.gov. This letter explains that the information you are seeking is already available for review on the website provided in the letter dated June 5, 2024.

Respectfully,

Public Information Officer
FBI - Information Management Division
200 Constitution Drive
Winchester, VA 22602
O: (540) 868-4593
E: foipaquestions@fbi.gov

Do you have further questions about the FOI/PA process? Visit us at
http://www.fbi.gov/foia

Please check the status of your request online at https://vault.fbi.gov/fdps-1/@@search-fdps    Status updates are performed on a weekly basis.

Note: This is a non-emergency email address. If this is an emergency, please call 911 directly. If you need to report a tip for immediate action, please contact FBI Tips at http://tips.fbi.gov/ or reach out to your local field office.

**From:**
**Sent:** Tuesday, June 18, 2024 10:36 AM
**To:** FOIPAQUESTIONS <FOIPAQUESTIONS@FBI.GOV>
**Subject:** [EXTERNAL EMAIL] - FOPIA Request No. 1637191-000

I am writing about Request No. 1637191-000 to better understand the response that was sent on June 5, 2024. The response directs me to the FBI FOIA website. Is that a refusal to search for records?

Thanks,

Exhibit G

**U.S. Department of Homeland Security**
Washington, DC 20528



Homeland
Security

May 30, 2024

Aamra Ahmad
American Civil Liberties Union
915 15th Street NW
Washington, D.C. 20005

Re:  2024-HQFO-01500

Dear Requester:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the
Department of Homeland Security (DHS), Privacy Office, dated 5/21/2024, and received in this
office on 5/21/2024.   You requested documents regarding all final policies, guidance,
procedures, directives, advisories, memoranda, agreements, training materials, legal opinions,
and/or records created January 20, 2017 to the present, pertaining to (1) the extent to which
JTTFs and fusion centers (a) monitor and collect information on people engaged in protest
activity and/or (b) associate protest with "terrorism," and (2) whether their privacy, civil rights,
and civil liberties policies are adequate to guard against abuses and discrimination. With
additional details provided within the request.

Due to the subject matter of your request, I am transferring this request to the FOIA Officer for
DHS Headquarters Office of Intelligence and Analysis (I&A), for processing under the FOIA
and direct response to you.  Please see below for their contact information.

DHS Headquarters Office of Intelligence and Analysis (I&A)
Privacy Office, Mail Stop 0655
Department of Homeland Security
2707 Martin Luther King Jr. AVE SE
Washington, DC 20528-065
Phone: 202-447-4561 | Fax: 202-612-1936 | E-mail: IAFOIA@HQ.DHS.GOV

You have a right to appeal the above determination.  Should you wish to do so, you must send
your appeal and a copy of this letter, within 90 days of the date of this letter, to:  Privacy Office,
Attn: FOIA Appeals, U.S. Department of Homeland Security, 2707 Martin Luther King Jr.
Avenue, SE, Mail Stop 0655, Washington, D.C. 20528-0655, following the procedures outlined
in the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.5(e)(2).  Your envelope and letter should be
marked "FOIA Appeal."  Copies of the FOIA and DHS FOIA regulations are available at
www.dhs.gov/foia.

You may contact the DHS FOIA Public Liaison at 202-343-1743 for any further assistance and
to discuss any aspect of your request.  You may also contact OGIS at the National Archives and

Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you need to contact our office again about this matter, please refer to 2024-HQFO-01500. You may contact this office at 1-866-431-0486 or 202-343-1743.

Sincerely,

Jimmy Wolfrey
Senior Director, FOIA Operations and Management

# Exhibit H

U.S. Department of Homeland Security
Office of Intelligence and Analysis
Washington, DC 20528



June 3, 2024

**SENT VIA E-MAIL TO:** ███████████

Aamra Ahmad
American Civil Liberties Union
915 15th Street NW
Washington, D.C.20005

Re:  **Freedom of Information Act Request 2024-IAFO-00290**

Dear Requester Ahmad:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request that was
received by the Department of Homeland Security (DHS), Privacy Office on May 21, 2024.
Your request was subsequently transferred to the DHS Office of Intelligence and Analysis (I&A)
on May 30, 2024, and received on May 30, 2024. You are seeking:

"The ACLU requests all final policies, guidance, procedures, directives, advisories, memoranda,
agreements, training materials, legal opinions, and/or records created January 20, 2017 to the
present, pertaining to (1) the extent to which JTTFs and fusion centers (a) monitor and collect
information on people engaged in protest activity and/or (b) associate protest with "terrorism,"
and (2) whether their privacy, civil rights, and civil liberties policies are adequate to guard
against abuses and discrimination."

Due to the increasing number of FOIA requests received by this office, we may encounter some
delay in processing your request.  Consistent with 6 C.F.R. Part 5 § 5.5(a) of the DHS FOIA
regulations, the Department processes FOIA requests according to their order of receipt.
Although DHS' goal is to respond within 20 business days of receipt of your request, FOIA does
permit a 10-day extension of this time period in certain circumstances under 6 C.F.R. Part 5 §
5.5(c).  As your request seeks documents that will require a thorough and wide-ranging search,
DHS will invoke a 10-day extension for your request pursuant to 6 C.F.R. Part 5 § 5.5(c). If you
would like to narrow the scope of your request, please contact our office.  We will make every
effort to comply with your request in a timely manner.

We are presently processing your request.  If any responsive records are located, they will be
reviewed for determination of whether any can be released.   Please be assured that one of the
analysts in our office will respond to your request as expeditiously as possible.  We appreciate
your patience as we proceed with your request.

Your request has been assigned request number **2024-IAFO-00290**.  Please refer to this identifier in any future correspondence.  The status of your FOIA request is now available online and can be accessed at: https://www.dhs.gov/foia-status, by using this FOIA request number.  Status information is updated daily.

If you have any questions, or would like to discuss this matter, please feel free to contact this office at I&AFOIA@HQ.DHS.GOV.
.

Sincerely,

*M. Adams*

M. Adams
Assistant FOIA Officer