**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AMERICAN CIVIL LIBERTIES UNION
and AMERICAN CIVIL LIBERTIES
FOUNDATION,

               Plaintiffs,

v.

DEPARTMENT OF JUSTICE, FEDERAL
BUREAU OF INVESTIGATION, and
DEPARTMENT OF HOMELAND
SECURITY,

               Defendants.

No. 24 Civ. 5722 (JSR)

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT**


JAY CLAYTON
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2614
Email: rebecca.salk@usdoj.gov


     REBECCA L. SALK
Assistant United States Attorney
      - Of Counsel

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................2

STANDARD OF REVIEW .........................................................................................4

ARGUMENT ..........................................................................................................5

    I.     DHS Conducted Adequate Searches of CRCL Records.................................5

          A.    The Law of Adequate Search.................................................................5

          B.    DHS' Searches Should be Upheld ........................................................6

    II.    The Government's Assertions of Exemptions Are Justified................................7

          A.    Exemption 5 ......................................................................................7

               i.    Legal Standard ........................................................................7

               ii.    Application by DHS.................................................................8

          B.    Exemption 6 ......................................................................................8

                i.    Legal Standard ........................................................................8

               ii.    Application by DHS.................................................................9

          C.    Exemption 7(E) ...............................................................................11

               i.    Legal Standard ......................................................................11

               ii.    Application by DHS...............................................................11

          D.    The Government Satisfied the Foreseeable Harm Requirement...............12

          E.    The Government Properly Segregated and Released Non-Exempt Portions of the Redacted Records ............................................................13

CONCLUSION......................................................................................................14

# TABLE OF AUTHORITIES

## *Cases*

*ACLU v. U.S. Dep't of Def.*,
  901 F.3d 125 (2d Cir. 2018)................................................................................................ 4

*Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*,
  376 F. Supp. 3d 345 (S.D.N.Y. 2019)................................................................................. 9

*Allard K. Lowenstein Int'l Project v. U.S. Dep't of Homeland Sec.*,
  626 F.3d 678 (2d Cir. 2010)............................................................................................... 11

*Amnesty Int'l USA*,
  728 F. Supp. 2d 479 (S.D.N.Y. 2010)................................................................................. 14

*Blackwell v. FBI*,
  646. F.3d 37 (D.C. Cir. 2011)............................................................................................. 13

*Bloomberg L.P. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  649 F. Supp. 2d 262 (S.D.N.Y. 2009)................................................................................. 4

*Brennan Ctr. for Just. at N.Y Univ. Sch. of Law v. U.S. Dep't of Just.*,
  697 F.3d 184 (2d Cir. 2012)............................................................................................ 7, 8

*Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*,
  377 F. Supp. 3d 428 (S.D.N.Y. 2019)................................................................................. 6

*Carney v. U.S. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994)............................................................................................... 4, 5

*Conti v. United States Dep't of Homeland Security*,
  No. 12 Civ. 5827 (AT), 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ................................. 6

*Dep't of the Interior v. Klamath Water Users Prot. Ass'n*,
  532 U.S. 1 (2001)................................................................................................................ 7

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
  739 F. Supp. 2d 515 (S.D.N.Y. 2010) ................................................................................. 9

*Grand Cent. P'ship, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999)......................................................................................... 5, 7, 8

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C. Cir. 2003)............................................................................................. 5

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989)................................................................................................. 7

*Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs.*,
  30 F.4th 318 (2d Cir. 2022) ................................................................................. 12

*Long v. Off. of Pers. Mgmt.*,
  692 F.3d 185 (2d Cir. 2012)............................................................................... 5, 9

*Maynard v. C.I.A.*,
  986 F.2d 547 (1st Cir. 1993)................................................................................. 5

*Nat'l Ass'n of Retired Fed'l Emps. v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989)............................................................................. 9

*N.Y. Times Co. v. U.S. Dep't of Just.*,
  872 F. Supp. 2d 309 (S.D.N.Y. 2012)................................................................. 2

*Peltier v. FBI*,
  218 Fed. App'x 30 (2d Cir. 2007)........................................................................ 9

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982)............................................................................. 5

*Seife v. FDA*,
  43 F.4th 231 (2d Cir. 2022) ............................................................................... 11

*Seife v. United States Food & Drug Admin.*,
  553 F. Supp. 3d 148 (S.D.N.Y. 2021) .............................................................. 8, 9

*Shapiro v. United States Soc. Sec. Admin.*,
  No. 2:19-CV-000238, 2021 WL 8316784 (D. Vt. Dec. 10, 2021) ..................... 9

*Sussman v. U.S. Dep't of Just.*,
  No. 03 Civ. 3618 (DRH)(ETB), 2008 WL 2946006 (E.D.N.Y. July 29, 2008) ....... 9

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007)…………………………………………………………..14

*Tigue v. DOJ*,
  312 F.3d 70 (2d Cir. 2002).................................................................................. 7

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*,
  510 U.S. 487 (1994)............................................................................................. 9

*U.S. Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982)............................................................................................. 9

iii

*Vaughn v. Rosen*,
 523 F.2d 1136 (D.C. Cir. 1975) ........................................................................ 12, 13

**Statutes**

5 U.S.C. § 552(a)(8)(A) ........................................................................ 11

5 U.S.C. § 552(b) ........................................................................ 13

5 U.S.C. § 552(b)(5) ........................................................................ 7

5 U.S.C. § 552(b)(6) ........................................................................ 8

5 U.S.C. § 552(b)(7)(E) ........................................................................ 10

**Rules**

Federal Rule of Civil Procedure 41(a) ........................................................................ 1

Federal Rule of Civil Procedure 56(a) ........................................................................ 4

Defendant Department of Homeland Security ("DHS" or the "Government"), by its attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment.

## PRELIMINARY STATEMENT

This action concerns a Freedom of Information Act ("FOIA") request by plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "Plaintiffs") that was sent to the Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), and DHS for records relating to the use of Joint Terrorism Task Forces ("JTTFs") and fusion centers "to investigate, collect, and disseminate information on people engaged in protest[.]" Plaintiffs' Complaint ("Compl."), ECF No. 1, ¶ 1. On April 25, 2025, Plaintiffs voluntarily dismissed their FOIA claims against DOJ, FBI, and all DHS components except the DHS Office of Civil Rights and Civil Liberties ("CRCL") without prejudice pursuant to Federal Rule of Civil Procedure 41(a). ECF No. 44.

Since that time, DHS' FOIA Office ("DHS-FOIA"), which now handles the processing of CRCL records, conducted a comprehensive search of CRCL's records in response to Plaintiffs' FOIA request. As explained in the declaration of Catrina M. Pavlik-Keenan (the "Pavlik-Keenan Decl.") filed in support of DHS' motion, DHS-FOIA's search was reasonably calculated to discover the documents requested. Further, where non-exempt responsive records were located, such records were released either in full or in part to Plaintiffs. To the extent responsive records were released in part, the Government properly withheld information subject to FOIA Exemptions 5, 6 or 7E. Because DHS conducted searches reasonably calculated to locate all responsive documents and properly withheld information pursuant to valid FOIA Exemptions, the Court should grant DHS' motion.

**BACKGROUND**[1]

On May 21, 2024, Plaintiffs sent a FOIA request (the "Request") to the FBI, the DHS Privacy Office ("DHS PRIV"), and the DOJ National Security Division ("DOJ NSD").  *See* ECF No. 1-1.  The Request contained four subparts.  *Id.* at 7-9.  Broadly, the Request sought: (1) final policies, guidance, procedures, advisories, memoranda, agreements, training materials, and legal opinions relating to JTTFs' and fusion centers' monitoring or investigating of individuals or organizations engaged in protest; (2) the number and names of individuals or groups investigated through or by JTTFs and/or fusion centers in connection with protests; (3) records concerning the definition of thirteen specific terms "as used and applied by JTTFs and/or fusion centers"; and (4) records describing the process "individuals may use to find out whether and what information has been collected and maintained by JTTFs and fusion centers, and the process by which any inaccurate information may be challenged and expunged."[2] *Id.*

By letter dated May 30, 2024, DHS PRIV acknowledged receipt of Plaintiffs' Request.  Pavlik-Keenan Decl. ¶ 7. DHS PRIV notified Plaintiffs that DHS Headquarters Office of Intelligence & Analysis ("DHS I&A"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE") were the DHS components most likely to possess responsive records.  *Id.*  DHS PRIV then transferred the Request to DHS I&A, CBP, and ICE.  *Id.*

---

[1] DHS has not submitted a Local Rule 56.1 statement. "The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." *N.Y. Times Co. v. U.S. Dep't of Just.*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted).  Moreover, Local Civil Rule 56.1 now specifically exempts FOIA cases from this requirement.  *See* Local Civ. R. 56.1(a).

[2] Plaintiffs agreed to withdraw item four of the Request with respect to CRCL, so long as DHS clarified the process for individuals to make requests for information collected and maintained by JTTFs and fusion centers.  As explained in DHS' declaration, DHS-FOIA does not have a specific procedure for requesting individual information and/or amending records that applies solely to records pertaining to JTTFs and/or Fusion Centers.  *Id.*  DHS-FOIA therefore did not engage in any further work with respect to item four of Plaintiffs' Request.

Plaintiffs filed this suit on July 29, 2024.  ECF No. 1.  Plaintiffs have since voluntarily dismissed their FOIA claims with respect to DOJ, the FBI, and all DHS subcomponents, except for CRCL. ECF No. 44.

As part of this litigation, Plaintiffs alleged that their FOIA request should have been referred to CRCL.  Pavlik-Keenan Decl. ¶ 11.  After receiving confirmation from CRCL that it might have records potentially responsive to Plaintiffs' request, DHS referred Plaintiffs' request to CRCL on October 23, 2024.  *Id.*  CRCL's FOIA office then conducted a search in response to Plaintiffs' FOIA request.  *Id.* ¶ 12.  CRCL identified 916 potentially responsive records (a total of 11,323 pages).  *Id.*  However, on March 21, 2025, the majority of CRCL employees, including those working in CRCL's FOIA office, were notified that they would be placed on administrative leave until their final date of employment on May 23, 2025.  *Id.* ¶ 13.  As a result, and despite CRCL's best efforts, CRCL was unable to determine what searches were run or how they were constructed.  *Id.*  Accordingly, on April 11, 2025, DHS, DOJ, and the FBI requested that the Court bifurcate their summary judgment motion with respect to CRCL, to permit CRCL to conduct another search for documents responsive to Plaintiffs' FOIA request.  *Id.* ¶ 14.  The Court granted this request.  *Id.*

On April 30, 2025, DHS-FOIA instructed DHS' Office of the Chief Information Officer to initiate a search of four CRCL employees' emails who were determined to be most likely to have responsive records.  *Id.* ¶ 15.  DHS ran three electronic searches across the e-mails of the four CRCL employees during the period of January 20, 2017, to April 30, 2025 (the date of the search). *Id.*  The searches yielded 102,537 pages of potentially responsive records.  *Id.* ¶ 16.  On May 12, 2025, DHS requested additional time to complete its processing work due to the reduction in force

and several technical issues experienced by the DHS-FOIA team. *Id.* ¶ 17. The Court granted DHS' request. *Id.*

DHS-FOIA began its processing work by reviewing and processing 545 pages of potentially responsive records. *Id.* ¶ 18. On May 15, 2025, CRCL made its first release to Plaintiff. *Id.* CRCL released 285 pages in full, released 228 pages in part, and withheld 32 pages in full. *Id.* DHS-FOIA withheld information under Exemptions 5 and 6. *Id.* However, after further review, DHS-FOIA determined that a significant portion of the May 15, 2025 release should have been deemed non-responsive. *Id.* (explaining that Plaintiffs' request seeks only "final" versions of various documents, but that DHS released drafts in response to Plaintiffs' request).

In order to identify documents within the initially identified set of records that were most likely to be responsive, DHS-FOIA applied additional search terms to the set. *Id.* ¶ 19. When those additional terms were applied, the set of potentially responsive records was narrowed to 10,524 pages. *Id.* ¶ 20. The additional search terms tracked the language of Plaintiffs' request. DHS FOIA then reviewed those records for responsiveness to Plaintiffs' FOIA request and determined that 358 pages were responsive. *Id.* On June 10, 2025, DHS-FOA released 326 pages in full and withheld 32 pages in part pursuant to FOIA Exemptions 6 and 7(E). *Id.*

## STANDARD OF REVIEW

"Summary judgment is the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P. v. Bd. of Governors of Fed. Rsrv. Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009). Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An agency can satisfy its burden on a motion for summary judgment by submitting a declaration that (1) supplies "facts indicating that the agency has conducted a thorough search" and (2) gives "reasonably detailed explanations why any withheld documents

4

fall within an exemption." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). An agency's justification for asserting an exemption "is sufficient if it appears logical and plausible." *ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018).

## ARGUMENT

### I.    DHS Conducted Adequate Searches of CRCL Records

#### A.    The Law of Adequate Search

To defend a FOIA search, an agency need only demonstrate "that its search was adequate." *Long v. Off. of Pers. Mgmt.,* 692 F.3d 185, 190 (2d Cir. 2012) (quotation marks omitted). A search is judged by the efforts the agency undertook, not by its results: the agency must demonstrate that its search was "reasonably calculated to discover the requested documents," not that the search "actually uncovered every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). The search "need not be perfect, but rather need only be reasonable." *Id*.

Declarations attesting to agency FOIA searches may be provided by the individuals supervising each agency's search, rather than by each individual who participated. *Carney*, 19 F.3d at 814. To describe a reasonable search, a declaration should explain "the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (citation and internal quotation marks omitted). The declaration need not "set forth with meticulous documentation the details of an epic search." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993). "[P]urely speculative

5

claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption. *Carney*, 19 F.3d at 813 (quotation marks omitted).

    B.  <u>DHS' Searches Should be Upheld</u>

       DHS' declaration makes clear that its searches were reasonable and should be upheld.   As explained in DHS' declaration, DHS searched the locations that were reasonably likely to contain records responsive to Plaintiffs' Request.  *See* Pavlik-Keenan Decl. ¶¶ 15-16.  DHS determined that if responsive records were to be found, they were reasonably likely to be identified by a search of CRCL employees' e-mails.  *Id.* ¶ 16 (explaining that CRCL does not have a central repository for the types of records requested by Plaintiffs); *id.* (explaining that all potentially responsive records would be captured electronically through an email search).  In addition, DHS selected custodians that were reasonably likely to maintain potentially responsive records due to the nature of their work.  *Id.* ¶ 15.  As explained in DHS' declaration, the four selected CRCL custodians worked within CRCL's Security, Intelligence and Information Policy ("SIIP") Section for CRCL's Programs Division.  *Id.*  Their roles involved "advising the DHS intelligence community, as well as monitoring and ensuring compliance with civil rights and civil liberties standards, and providing training and technical assistance to fusion centers."  *Id.*  Two of the employees were senior managers with several years of experience and the other two employees selected were longstanding members of the SIIP team.  *Id.*  Moreover, DHS' searches were reasonably designed to locate records responsive to Plaintiffs' Request.  *See id.* ¶¶ 15, 19.  DHS applied search terms based on the specific language used in Plaintiffs' request.  *Id.*

       Because DHS searched the locations it believed were likely to contain responsive records and its search terms were "reasonably tailored" to uncover documents responsive to Plaintiffs' request, DHS' search should be upheld.  *See Brennan Ctr. for Justice at New York Univ. Sch. of*

*Law v. U.S. Dep't of Justice*, 377 F. Supp. 3d 428, 434 (S.D.N.Y. 2019); *Conti v. United States Dep't of Homeland Security*, No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014) ("[A]n agency need only search those systems in which it believes responsive records are likely to be located.").

## II.    The Government's Assertions of Exemptions Are Justified

"Upon request, FOIA mandates disclosure of records held by a federal agency, unless the documents fall within enumerated exemptions." *Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 7 (2001). While FOIA is intended to promote government transparency, the FOIA exemptions are "intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

Here, DHS withheld records pursuant to FOIA exemptions 5, 6, and 7(E). As logically and plausibly explained below and in DHS' declaration, these withholdings were proper.

### A.    Exemption 5

#### i.    Legal Standard

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Thus, Exemption 5 protects from disclosure agency documents "which would not be obtainable by a private litigant in an action against the agency under normal discovery rules." *Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002) (quotation marks omitted). Exemption 5 incorporates the full array of civil privileges, including the deliberative process privilege. *See Grand Cent. P'ship*, 166 F.3d at 481.

An inter- or intra-agency document may be withheld pursuant to the deliberative process privilege if it is: "(1) predecisional, *i.e.,* prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually . . . related to the process by which

policies are formulated." *Brennan Ctr. for Just. at N.Y Univ. Sch. of Law v. U.S. Dep't of Just.*, 697 F.3d 184, 194 (2d Cir. 2012) (quotation marks omitted).  The privilege "protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Grand Cent. P'ship*, 166 F.3d at 482.

  ii. *Application by DHS*

  DHS withheld pages in part pursuant to Exemption 5 and the deliberative process privilege. *See* Pavlik-Keenan Decl. ¶ 23.  Each of the documents withheld pursuant to Exemption 5 were drafts, and nearly all contained comments and/or edits in track changes.[3]  *Id.*  As explained in DHS' declaration, the information withheld consisted of the thoughts, opinions, and pre-decisional impressions of low-level DHS staff.  *Id.* ¶ 24.  Moreover, edits and/or comments were provided to assist a decisionmaker in arriving at a decision on certain topics, including, among other things, guidance for fusion centers on civil rights and civil liberties, the impact of the presidential budget on agency staff, and policies for preventing terrorism.  *Id.* ¶¶ 23-24.  Indeed, comments from lower-level employees to a decisionmaker "reflect the give-and-take of the consultive process," and are therefore deliberative.  *See Brennan Ctr.*, 697 F.3d at 202 (quotation marks omitted).

  In addition, DHS applied Exemption 5 to "subjective" documents that "reflect the personal opinions of the writer rather than the policy of the agency."  *See Grand Cent. P'ship*, 166 F.3d at 482; *see* Pavlik-Keenan Decl. ¶ 23 (application to drafts of a guidance document, draft presentation containing civil liberty principles to be applied to intelligence products, draft statement regarding impact of presidential budget, draft policy document, draft strategy document, draft briefing on

---

[3] As an initial matter, and as previously mentioned, the drafts that were withheld pursuant to Exemption 5 should have been deemed non-responsive, as Plaintiffs' request only seeks "final versions" of various types of documents. *See* Pavlik Keenan Decl., ¶ 18.

targeted violence/terrorism prevention). Courts in the Second Circuit have found that these types of draft documents are properly withheld pursuant to Exemption 5. *See, e.g.*, *Seife v. United States Food & Drug Admin.,* 553 F. Supp. 3d 148, 169 (S.D.N.Y. 2021) (finding Exemption 5 properly applied to draft scripts, draft communications plans, and a draft strategy memorandum); *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 549 (S.D.N.Y. 2010) (finding agency properly withheld drafts of guidelines under the deliberative process privilege); *Shapiro v. United States Soc. Sec. Admin.*, No. 2:19-CV-000238, 2021 WL 8316784, at *8 (D. Vt. Dec. 10, 2021) (finding Exemption 5 properly applied to discussions regarding a draft statement about a notice of proposed rulemaking, a draft administrative message, and draft agency regulatory priorities, among others); *Sussman v. U.S. Dep't of Just.,* No. 03 Civ. 3618 (DRH)(ETB), 2008 WL 2946006, at *2 (E.D.N.Y. July 29, 2008) (finding Exemption 5 properly applied to a draft policy proposal). DHS' withholdings pursuant to Exemption 5 should therefore be upheld.

    B.  <u>Exemption 6</u>

        i.  *Legal Standard*

Exemption 6 exempts from disclosure information from personnel, medical, or other similar files where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from government records." *Id.* at 602.

To be protected, the individual's privacy interest must only be more than *de minimis*. *Long*, 692 F.3d at 191 ("[T]he bar is low: 'FOIA requires only a measurable interest in privacy to trigger

the application of the disclosure balancing tests.'").  Substantial privacy interests cognizable under FOIA "includes such items as a person's name, address, place of birth, employment history, and telephone number."  *Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 366 (S.D.N.Y. 2019).   If a privacy interest is found, it "must be weighed against the public interest that would be advanced by disclosure." *Long*, 692 F.3d at 193.  But the "only relevant public interest in disclosure to be weighed . . . is the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government."  *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (quotation marks and citations omitted).   If the public interest is negligible, "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed'l Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

ii.    *Application by DHS*

Here, DHS' withholdings pursuant to Exemptions 6 were proper.   Critically, DHS limited its redactions pursuant to Exemption 6 to contact information of employees, aside from the names of managerial employees, as well as the names and contact information of individuals who are not employed at DHS.  Pavlik-Keenan Decl. ¶ 27.   There is no cognizable public interest in the personal information that was withheld, including the identities of third parties whose names happen to appear in law enforcement files.  *See Peltier v. FBI*, 218 Fed. App'x 30, 32 (2d Cir. 2007) ("[D]isclosure of personal information about cooperating witnesses and other third parties advances no cognizable public interest under FOIA."); *see also* Pavlik-Keenan Decl. ¶ 27.  DHS' withholdings pursuant to Exemption 6 should therefore be upheld.

C.  Exemption 7(E)

    *i.  Legal Standard*

Exemption 7(E) exempts from disclosure records that: (1) "would disclose techniques and procedures for law enforcement investigations or prosecutions"; or (2) "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *Allard K. Lowenstein Int'l Project v. U.S. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010).

    *ii.  Application by DHS*

Here, DHS properly applied Exemption 7(E) to protect "procedures and techniques used by the intelligence community, including Fusion Centers and JTTF[s], to eradicate acts of domestic violent extremism."  Pavlik-Keenan Decl. ¶ 30.  As outlined in DHS' declaration, DHS redacted 8 pages that contained "an assessment of certain activities, circumstances, and indictors that would indicate potential violence by anarchist extremists at First Amendment-protected events," as well as "records containing detailed mitigation practices to reduce or eliminate violence that may occur at First Amendment-protected events."  *Id*.  DHS also applied Exemption 7(E) to a "source summary statement" that relates to "domestic terrorists' exploitation of heightened tensions during a First Amendment protected activity." *Id.* ¶ 31.  Significantly, the source summary statement "contained detailed assessments on the confidence of the information and the sources of the analyses." *Id.*

As explained in the DHS declaration, disclosure of the above-referenced types of information would expose intelligence and law enforcement partners' techniques and procedures for law enforcement investigations.  *Id.* ¶ 32.  Specifically, disclosure of the activities, circumstances, and indicators for potential violence, as well as the steps to mitigate such activity, could reasonably be expected to lead to circumvention of the law.  *Id.*  Moreover, disclosing

detailed assessments concerning the confidence of information and law enforcement sources would reveal "sensitive techniques and procedures, unknown to the public, on how law enforcement evaluates information in conducting such investigations of potential violence at First Amendment-protected activities." *Id.*    Because "disclosure of that material would reveal particulars about the way in which an agency enforces the law and the circumstances that will prompt it to act," such material is properly withheld pursuant to Exemption 7(E).  *See Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs.,* 30 F.4th 318, 332 (2d Cir. 2022).  Accordingly, DHS is entitled to summary judgment on its withholdings under Exemption 7(E).

D.  The Government Satisfied the Foreseeable Harm Requirement

In addition to determining that the withheld records or portions of records fall within one or more of the Exemptions discussed above, the Government also satisfied the foreseeable harm requirement.  Under FOIA, an agency can withhold information under a FOIA exemption only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or if disclosure is "prohibited by law." 5 U.S.C. § 552(a)(8)(A); *see also Seife v. FDA*, 43 F.4th 231, 235 (2d Cir. 2022).  The Government's declarations demonstrate that disclosure of the exempt records would lead to foreseeable harms that the exemptions are designed to avoid.

With respect to Exemption 5, DHS' declaration makes clear that if the records withheld under this exemption were disclosed, government employees would be discouraged from sharing their candid opinions, which would compromise the agencies' ability to make quality decisions. *See* Pavlik-Kennan Decl. ¶ 25 ("Disclosure of such communications would significantly impair the decision-making process and have a strong chilling effect.").  This is precisely the harm that Exemption 5 was designed to prevent. *See Vaughn v. Rosen,* 523 F.2d 1136, 1146 (D.C. Cir. 1975)

("[Exemption 5 was] designed to protect a true deliberative process usually leading up to final decisions[.]").

With respect to Exemption 6, DHS' declaration explains why the disclosure of personal identifying information of federal employees and third parties would potentially subject the individuals to unwarranted attention and interfere with law enforcement activities. Pavlik- Keenan Decl., ¶ 28. Disclosure would therefore foreseeably harm the interests protected by Exemptions 6 in protecting against unwarranted invasions of personal privacy.

Finally, with respect to Exemption 7(E), DHS has explained that disclosure of its non-public investigative techniques would risk circumvention of the law.[4] *See id.* ¶ 33 ("[B]y revealing activities, circumstances, and indicators that would indicate potential for violence, and steps to reduce or eliminate violence . . . individuals could avoid law enforcement from identify[ing] actions they take to conduct violence"); *id.* ("[R]evealing detailed assessments on the credibility of law enforcement information it receives and collects, and the sources of information, that are unknown to the public, could allow individuals to avoid law enforcement in planning and conducting violet activities[.]"). DHS' declarations therefore show that disclosure would harm the interests protected by the exemption.

E. The Government Properly Segregated and Released Non-Exempt Portions of the Redacted Records

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to

---

[4] The Second Circuit has held that records containing information about law enforcement techniques are exempt from FOIA disclosure "without need for demonstration of harm." *Lowenstein*, 626 F.3d at 681 (quotations omitted). However, the "foreseeable harm" requirement was added by Congress after *Lowenstein*, and the impact on the reasoning of *Lowenstein* is not clear. Regardless, even if a showing of reasonably foreseeable harm is required, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding," and "only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646. F.3d 37, 42 (D.C. Cir. 2011).

any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). "[T]he law is clear that the reasonable segregation requirement of FOIA does not require [an agency] to commit significant time and resources to a task that would yield a product with little, if any, informational value." *Amnesty Int'l USA*, 728 F. Supp. 2d 479, 529 (S.D.N.Y. 2010) (quotation marks omitted).

Here, DHS attests that they conducted a line-by-line review of the produced records and segregated non-exempt information when it was not inextricably intertwined with exempt information. *See* Pavlik-Keenan Decl. ¶ 36. Accordingly, the Court should find that all "reasonably segregable portion[s]" of the responsive records have been provided to Plaintiffs. *See* 5 U.S.C. § 552(b).

## **CONCLUSION**

For the foregoing reasons, the Court should grant DHS' motion for summary judgment.

Dated: New York, New York
June 13, 2025

<div style="margin-left:40%">

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendant*

By:    /s/ *Rebecca L. Salk*
REBECCA L. SALK
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2614
E-mail: rebecca.salk@usdoj.gov

</div>

14

<u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that this memorandum of law complies with the world limit outlined in Local Civil Rule 7.1(c).   According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted pursuant to Local Civil Rule 7.1(c) is 4,225 words.


Dated:  New York, New York
        June 13, 2025

                                         By:      /s/ *Rebecca L. Salk*
                                                  REBECCA L. SALK
                                                  Assistant United States Attorney
                                                  86 Chambers Street, 3rd Floor
                                                  New York, New York 10007
                                                  Tel: (212) 637-2614
                                                  E-mail: rebecca.salk@usdoj.gov